### 15520.   HELMER *v.* WILSON & COMPANY.

Those parts of the pleading in which the defendant contended that there was no binding legal contract as declared upon by the plaintiff, because the plaintiff failed and refused to furnish, as agreed, a formal written contract covering the sale of the butter in question, were properly stricken by the court, it appearing, from the allegations of the defendant's cross-action, that he stood upon and affirmed the existence of the contract sued upon, and was demanding his legal rights under it. Pleadings are to be construed most strongly against the pleader, and "where a plea both admits and denies the execution of a contract which binds the pleader and the adverse party to mutual obligations, the admission, and not the denial, must prevail."

Where, in an executory contract of sale of merchandise, it is provided that the purchaser shall order out the merchandise from time to time,—all to be ordered and taken out by a certain date,—the seller is not required, in the absence of an order, to deliver or tender to the purchaser, on the last day, the merchandise not ordered out.

The evidence authorized the verdict for the plaintiff, and the court did not err in overruling the motion for a new trial.

DECIDED JUNE 10, 1924.

Breach of contract; from Fulton superior court—Judge E. D. Thomas.   February 7, 1924.

Wilson & Company, a corporation, sued J. H. Helmer, trading as the Gate City Dairy Company, for breach of an alleged contract, evidenced by the following letters exchanged between the parties:

EXHIBIT A.

"Atlanta, Ga., July 14th, 1920.

"Gate City Dairy Co., City.

"Gentlemen:  This will confirm sale to you of 600 tubs sweet butter at 57-½c per pound for July delivery with 1-½c per pound additional carrying charges for each month thereafter, the entire amount to be delivered not later than November 31st.   Contract will be forwarded for your signature within a few days.

"Yours truly, Wilson & Company."

EXHIBIT B.

"Gate City Dairy, 138 Edgewood Avenue, Atlanta, Ga., 7/15/20.
"Wilson & Co., City.

"Gentlemen: In reference to yours of the 14th, confirming sale of 600 tubs butter, you state in your letter the entire amount to be delivered not later than Nov. 1st, this is in error. It should read not later than Nov. 31st. Kindly change your record accordingly.

"Yours truly, Gate City Dairy."

EXHIBIT C.

"Atlanta, Ga., July 17, 1920.

"Gate City Dairy Company, City.

"Gentlemen: Answering your letter of July 15th, in which you call our attention to the fact that in our letter of the 14th we gave you until November 1st to take out 600 tubs sweet butter, whereas this should have read November 31st. This letter will serve to change the date of this to November 31st as requested, and also confirm our agreement for you to put up a deposit of 5c per pound on this butter, said deposit to remain on deposit until the last lot of this butter is delivered and be deducted from invoice billing last lot. As agreed, it will be satisfactory for you to put up this deposit next Thursday, July 22d.

"Yours truly, Wilson & Company."

In the petition it is alleged: that, pursuant to the terms of the contract, the defendant deposited with the plaintiff the sum of $1800; that of the 600 tubs of butter purchased by the defendant from the plaintiff 428 tubs were delivered to and received by the defendant, and that he paid for all of this butter except 25 tubs delivered on November 22, 1920; that the defendant refused and declined to receive and accept the remaining 172 tubs of butter as he had contracted to do; that, after notifying the defendant, the plaintiff sold the remaining 172 tubs of butter in the open market; that the contract price of the 172 tubs of butter which the defendant declined to accept, plus the contract price of the 25 tubs of butter which the defendant received but failed to pay for, and certain storage charges, amounted to $7,870.65; that the sum received from the resale of the 172 tubs of butter which the defendant declined to accept, plus the defendant's deposit of $1,800 and certain credits due the defendant for short weights and allowances, amounted to $6,919.81; and that the plaintiff was entitled to

recover from the defendant the difference between these amounts, to wit, $950.84.

The defendant demurred to the petition, on the ground that it "does not show any contract between defendant and plaintiff, but shows that a contract was to be made but that it was never consummated." To meet this demurrer, which the court sustained with leave to amend, the plaintiff amended its petition as follows: "About the 15th day of July, 1920, petitioner and defendant entered into a parol contract for the sale of butter, petitioner notifying defendant that it would submit a special form of written contract to defendant some time later, but said contract was never executed, for the reason that petitioner and defendant reduced to writing, in the form of letters, the terms and conditions of their parol contract, and, pursuant to said letters, which are identified as exhibits 'A,' 'B' and 'C' of plaintiff's original petition, defendant ordered sweet butter from petitioner, and said orders were delivered by petitioner in accordance with the written contract evidenced by letters marked exhibit 'A,' 'B' and 'C' of plaintiff's original petition."

The defendant filed an answer, in which he alleged, among other things, that, "he deposited $1,800 with plaintiff, in good faith, in order to carry out a contemplated contract with plaintiff, but says that plaintiff failed and refused to prepare and execute the contract in accordance with their conversations and letters, though this defendant time and again demanded that plaintiff execute contract in accordance with its oral and written agreement;" and "that he bought and paid for a large amount of butter from plaintiff, but denies that any valid contract existed, because plaintiff failed and refused to execute said contract as agreed." These allegations were, on written motion for plaintiff, stricken. By way of further answer the defendant filed a cross-action, or set-off, in which he alleged:

"(a) This defendant deposited $1,800 with plaintiff July 22d, 1920, in order to secure the contract referred to in plaintiff's letter of July 14th, 1920, but, inasmuch as plaintiff did not consummate said contract, he is entitled to 7% interest on said amount from that date.

"(b) Defendant paid plaintiff $187.90 too much, by reason of short weights on butter bought from plaintiff.

"(*c*) Defendant bought of plaintiff November 22d, 1920, butter amounting to $986.32.

"(*d*) Plaintiff is owing this defendant $1,043.58, as will be fully shown by statement hereto attached, marked 'Exhibit A.'

"(*e*) Defendant, for further answer, says: Even if there was a valid contract between plaintiff and this defendant as alleged by plaintiff, the same was breached by plaintiff, and defendant is in no way liable on same.

"(*f*) According to the contract as agreed upon and as was to be incorporated in the written agreement referred to in aforesaid letter of July 14th, 1920, said butter was to be delivered to defendant in Atlanta in such amounts as required by him from time to time, but all was to be delivered not later than November 31st, 1920.

"(*g*) When plaintiff did not deliver said butter by December 1st, 1920, nor offer to deliver same, this defendant went to plaintiff and demanded said butter, plaintiff refused to deliver same, saying that it only had 23 tubs in Atlanta and would have to ship same in. Defendant told plaintiff that he had sold said butter for immediate delivery, and it would have to be delivered then or not at all, but plaintiff then and there refused to make delivery of said butter."

Paragraph (*a*) of this cross-action, on written motion of plaintiff, was stricken.

The defendant filed also the following amendment to his original answer:

"1.   On or about July 14, 1920, the plaintiff and the defendant entered into an oral agreement with reference to the sale and delivery of the butter involved in this case. Under this agreement plaintiff was to sell and deliver to defendant the butter set out in defendant's answer heretofore filed. Said agreement provided that said butter was to be delivered at defendant's place of business at 138 Edgewood Avenue, in the city of Atlanta. Said delivery was to be made by the plaintiff. The grade of the butter was to be what is known as 92 score. The dates on which the advances of 1-½c per pound were to accrue and be chargeable against this defendant were not agreed upon, but were to be agreed upon later.

"2.   At said time it was the expressed intention of the parties, and it was the intention of this defendant, that all the terms of said oral agreement and all the terms under which said sale was to be made were to be reduced to writing and signed by both parties [as]

a formal contract, as the evidence of the terms of their said agreement. It was the further intention of the parties to said agreement, and the intention of this defendant, that said agreement was not to be binding on them until the execution of said formal contract.

"3. The letters of July 14th, July 15th, and July 17th, copies of which are attached to plaintiff's petition, were not intended by the parties to be construed as said formal contract hereinbefore referred to, nor to take the place thereof, but it was the intention of the parties that said formal contract should be submitted by the plaintiff to the defendant, as stated in said letter dated July 14, 1920.

"4. Under said agreement, the said formal contract was to be prepared by the plaintiff in duplicate, and signed by the plaintiff, and submitted to the defendant, and the defendant was to sign the same, and one copy thereof was to be retained by the defendant and one copy to be held by the plaintiff. The plaintiff agreed to prepare and submit to the defendant said contract, as stated, and this is the contract referred to in said letter dated July 14, 1920.

"5. After the sending and receipt of said letters this defendant immediately requested and demanded of the plaintiff that it comply with said agreement and submit to the defendant said formal contract, as promised in said oral agreement and in said letter of date July 14, 1920, and the plaintiff repeatedly promised and agreed to prepare [and] deliver to this defendant said formal contract, but the plaintiff, having received defendant's money, to wit, the sum of eighteen hundred dollars, failed and refused to do so, and thereby wilfully breached said agreement with this defendant.

"6. Plaintiff by said promises led this defendant to believe that it would submit said formal contract, and defendant, relying upon said promises and believing that the plaintiff would fulfill the same, and for no other reason, made the said deposit of eighteen hundred dollars. Defendant further alleges that from time to time he demanded said formal contract, during the months of July, August, September, and October, and upon each demand made by the defendant the plaintiff agreed to furnish said formal contract, and, relying upon said promises and misled thereby, this defendant received from the plaintiff all the butter referred to in plaintiff's petition and amendment thereto, and amounting to approximately 428 tubs, and during all said time this defendant was demanding

said formal contract, and the plaintiff was promising this defendant that the same would be prepared and submitted to him, as agreed upon.

"7. Defendant further says that during all the time he had any dealings with the plaintiff, and during all the time he was receiving said butter from the plaintiff, the plaintiff continued making said promises to deliver to him said formal contract, as it had agreed to do.

"8. Defendant further says that the allegation in paragraph 1 of the amendment to plaintiff's petition, filed on the 13th day of June, 1921, to wit, 'Said contract was never executed, for the reason that petitioner and defendant reduced to writing, in the form of letters, the terms and conditions of their parol contract, and pursuant to said letters, which are identified as Exhibits A, B, and C of plaintiff's original petition, defendant ordered sweet butter from petitioner, and said orders were delivered by petitioner in accordance with the written contract evidenced by letters marked Exhibits A, B, and C of plaintiff's original petition,' is not true, and that petitioner and defendant did not reduce their contract to writing in the form of letters referred to, and this defendant did not order butter from petitioner, and said orders were not delivered by petitioner in accordance with said letters, but whatever was done between the parties and by this defendant was done upon the promise by the plaintiff, upon which this defendant relied, that said formal contract would be submitted by the plaintiff to this defendant as agreed upon, and not otherwise."

The plaintiff orally demurred to this amendment, upon the ground that the facts alleged therein were insufficient to constitute any legal defense to its cause of action. The court sustained the demurrer and struck the amendment. To all the adverse rulings upon his pleadings the defendant filed exceptions pendente lite. The case then proceeded to trial, resulting in a verdict for the plaintiff for the full amount sued for. The defendant made a motion for a new trial, which was overruled, and he sued out a bill of exceptions to this court, assigning error upon his exceptions pendente lite and upon the overruling of his motion for a new trial.

*Dorsey, Brewster, Howell & Heyman, Mark Bolding,* for plaintiff in error.

*Walter S. Dillon, C. M. Lancaster,* contra.

BROYLES, C. J.   (After stating the foregoing facts.)

1.   The contention that the court erred in striking, on written motion, certain parts of the original plea and in sustaining the plaintiff's oral demurrer to the amendment to the plea, is without merit.   The facts alleged in the portions of the plea stricken and in the amendment were, in effect, that there was no binding legal contract as declared upon by the plaintiff, because the plaintiff had failed and refused to provide and furnish (as it had agreed to do in its letter of July 14, 1920) a formal or special written contract covering the sale of the butter in question.   Such a defense might have been good but for the fact that it affirmatively appears, from the allegations of the defendant's cross-action, that he stood upon and affirmed the existence of the contract sued upon, since, in addition to admitting that he owed plaintiff $987.34 for butter ordered out and delivered under the terms of the contract, he alleged that he was entitled to recover of the plaintiff because the latter, "according to the contract as agreed upon," was to deliver all of the butter purchased, "not later than November 31st, 1920," and that "when plaintiff did not deliver said butter by December 1st, 1920, nor offer to deliver same, this defendant went to the plaintiff and demanded said butter."   These facts amounted to a solemn admission in judicio that there was a valid existing contract, and that the defendant was demanding his legal rights thereunder, notwithstanding the plaintiff had failed to furnish a formal written contract as it had agreed to do.   As was said by this court in the case of *City of Moultrie* v. *Schofield's Sons Co.*, 6 *Ga. App.* 464 (65 S. E. 315), "pleadings are construed most strongly against the pleader, and where a plea both admits and denies the execution of a contract which binds the pleader and the adverse party to mutual obligations, the admission, and not the denial, must prevail."   See also, to the same effect, *Williams Mfg. Co.* v. *Warner Refining Co.*, 125 *Ga.* 408, 411 (54 S. E. 95).

2.   The main contention of the defendant, as presented by his motion for a new trial, is that the undisputed facts adduced upon the trial were legally insufficient to authorize a recovery by the plaintiff, because they indisputably showed that the plaintiff (and not the defendant) breached the contract, by failing to deliver or tender the remaining 172 tubs of butter on or before November 30, 1920, as it had contracted to do.   We cannot agree with this con-

tention. In addition to the terms of the contract as contained in the letters exchanged between the parties, quoted in the statement of facts, the evidence developed the following facts: The defendant was engaged in the manufacture of ice cream and purchased from the plaintiff a large quantity of sweet butter to be used by him in his business from time to time over a period of several months. The butter purchased was what is known as unsalted butter, and in order to preserve it a very low temperature was required. Neither the plaintiff nor the defendant had a suitable place to store the large quantity of butter purchased. In fact, when the contract was made, there was no place in Atlanta where a storage of this kind could be obtained. It was, therefore, agreed that the plaintiff should store the butter in Birmingham, the nearest point available for such storage. It was distinctly agreed that the defendant should order out, from week to week, the amount of butter required by him in the manufacture of ice cream. The defendant did actually order out a sufficient quantity of butter, from week to week, to meet the requirements of his business, until he had used all the butter purchased except 172 tubs, paying in full for all the butter used except the last shipment, made on November 22, 1920, which constituted 25 tubs of the value of $986.32.

Viewed in the light of these facts, we cannot hold that the evidence demanded a finding that the plaintiff breached the contract because it failed to deliver or tender on or before the 30th of November, 1920, the 172 tubs of butter not ordered out. Where, in an executory contract of sale, it is provided that the purchaser shall order out the merchandise from time to time, all to be ordered and taken out by a certain date, the seller is not required, in the absence of an order, to deliver or tender to the purchaser, on the last day, the merchandise not ordered out. In such a contract it is not obligatory on the part of the seller to deliver until the purchaser has ordered. See, in this connection, *Lee v. Bewley-Darst Coal Co.,* 22 *Ga. App.* 693 (97 S. E. 99); *Caddick Milling Co.* v. *Moultrie Grocery Co.,* 22 *Ga. App.* 524, 530 (96 S. E. 583); *Gude v. Bailey Co.,* 4 *Ga. App.* 226 (61 S. E. 135); *Bearden Mercantile Co.* v. *Madison Oil Co.,* 128 *Ga.* 695 (58 S. E. 200); *Maddox* v. *Wagner,* 111 *Ga.* 146 (36 S. E. 609). The rule is clearly stated in the case of Scruggs v. Riddle, 171 Ala. 350 (54 So. 641), as follows: "Where a party to an executory contract of sale of goods has as-

sumed the duty to do some precedent act upon which a subsequent act, looking to a consummation of the sale by the other party, depends, the former has not complied with his obligation until he performs, and the latter is not in default so long as the former has not performed, provided of course, there was or has been no waiver by the latter of performance by the former."

Moreover, the evidence shows that about a week prior to November 30, 1920, one of the plaintiff's agents, a Mr. Crowder, went to the defendant's place of business and, finding that he was out, took up with a Mr. Goodrich, who was acting as manager of the defendant's business, the question of the disposition of the 172 tubs of butter not ordered out. A plan was adopted by these representatives of the plaintiff and the defendant whereby the contract then in existence was to be carried into effect, it being agreed that the butter not ordered out was to be charged to the defendant's account, but was to remain in storage in Birmingham; and, in order to save extra charges, it was to remain stored in the name of the plaintiff, and to be ordered out by the defendant from time to time as he required it in his business. This plan was binding upon the defendant, and operated to extend the time in which the butter was to be ordered and taken out. See, in this connection, *William Alsberg & Co.* v. *Harper Mfg. Co.,* 31 *Ga. App.* 586 (2) (121 S. E. 586). It is true that the conversation between Crowder and Goodrich in reference to this plan was objected to by the defendant, on the ground that there was no evidence showing that Goodrich had authority to bind the defendant in this respect; but there was no substantial merit in this objection, since the evidence shows that Goodrich signed the only letter written by the Gate City Dairy Company which passed between the parties and which consummated the sale, and two witnesses testified that Goodrich was manager, and one of them testified also that Goodrich transacted all the business for the Gate City Dairy Company. The defendant himself testified that when he was out of town Goodrich acted as manager of the business.

3. The grounds of the motion for a new trial not disposed of by the foregoing rulings, when considered in the light of all of the particular facts of the case and the charge of the court as a whole, are without substantial merit and do not require a reversal of the judgment below.

*Judgment affirmed. Luke and Bloodworth, JJ., concur.*