## 32282. NORTH GEORGIA PRODUCTION CREDIT ASSOCIATION v. VANDERGRIFT et al.

BOWLES, Justice.

This is an appeal from the lower court's order granting appellee's (defendant's in the court below) motion for a directed verdict against appellant (plaintiff in the court below), at the close of plaintiff's evidence, and in further receiving a subsequent verdict on defendant's counterclaim, as well as a subsequent verdict on intervenors' claim, and entering judgment on the latter verdicts.

Because of the multiple parties involved we will refer to them as they appeared in the trial court. Plaintiff was North Georgia Production Credit Association, who brought an action for declaratory judgment in the Superior Court of Jackson County, Georgia against Alexander Vandergrift, as defendant. Messrs. McGowen, Groover and Mize, filed application to intervene in the case which was allowed.

In substance, plaintiff's complaint alleged that it held title to a certain two-acre tract of land in Jackson County under the terms of a deed to secure debt from the intervenors. Previously, plaintiff held a deed to secure debt to this two-acre tract and other land from one Edgar Escoe who is the same person as Jack Escoe, and which instrument secured an obligation of $89,000, owed by Escoe to plaintiff. Because of Escoe's default, plaintiff on May 7, 1974, foreclosed its deed to secure debt, and sold the two-acre tract, along with other real estate, by virtue of the power of sale contained in that deed to secure debt. The successful bidders at the sale were the intervenors. On May 21, 1974, plaintiff loaned the intervenors $78,500

as part of the purchase money for the land involved, and accepted as security from the intervenors the security deed herein referred to, which included the two-acre tract and other real estate.

Thereafter, defendant Vandergrift filed a complaint in equity, in the Superior Court of Clarke County, Georgia, wherein he named plaintiff and intervenors as defendants, and sought to enjoin acts of trespass on the disputed two-acre tract and to further enjoin all acts interfering with defendant's claim to possession.

As a result of defendant's claim to title and possession of the disputed property, intervenors contend they are not obligated to pay plaintiff the amount owed it by virtue of the promissory note and deed to secure debt from intervenors to plaintiff, and further contend that the foreclosure deed conveying the disputed two-acre tract to intervenors is void. Plaintiff alleged that as a result of defendant's action and intervenors' subsequent refusal to pay, plaintiff was left insecure and uncertain as to its rights to foreclose on its deed to secure debt, or to take any action with respect to the disputed property. Plaintiff asked the court for a judgment declaring that it had title to the disputed property for the purpose of securing a debt from the intervenors to plaintiff and a determination that the defendant had no title to the same. The defendant responded to the complaint by admitting jurisdiction, and denying that he made claim to the property described in plaintiff's complaint, denied that he contended that he had legal title to said property, denied that the intervenors were wrongfully trespassing and wrongfully claiming said property, denied that their conduct constituted a continuing nuisance and denied that he contended that he had suffered irreparable harm by virtue of the conveyance by plaintiff to the intervenors of the disputed tract. Defendant also denied that a complaint in equity had been filed in Clarke Superior Court against all of the parties as set forth in plaintiff's complaint. As to the other allegations in plaintiff's complaint, defendant answered "for want of sufficient information upon which to form a belief, defendant can neither admit nor deny the allegations..." Defendant also filed a counterclaim in which he sought to incorporate

most of the allegations of a complaint in equity theretofore filed in the Superior Court of Clarke County, Georgia, bearing Civil Action No. 26227, (being the specific lawsuit referred to in plaintiff's complaint) and attached a copy to his counterclaim. The counterclaim sought a declaratory judgment declaring that defendant has title to a certain described tract of land described in the Clarke County complaint, which overlaps substantially the property described in plaintiff's complaint, asked that the intervenors be made parties to the counterclaim, and that plaintiff and the intervenors be jointly and severally, permanently enjoined from interfering with defendant's quiet, peaceful, exclusive and uninterrupted possession of his described property.

The intervenors contended they were not obligated to pay plaintiff the amount owed by virtue of the promissory note issued by intervenors in plaintiff's behalf, and further contended that the foreclosure deed conveying the disputed two-acre tract from plaintiff as attorney in fact for Edgar Escoe to them was void. They contended that Edgar Escoe did not own the tract in question at the time he conveyed the same by deed to secure debt to the plaintiff, and therefore the court should enter its judgment setting aside the deed to secure debt granted by intervenors to the plaintiff in the amount of $78,500. In addition, they sought to recover the cash down payment they made.

Upon the trial of the case counsel for the parties stipulated in open court that plaintiff's Exhibit Nos. 1 through 10, and defendant's Exhibit Nos. 1 through 7 and No. 13, would be admitted in evidence without further proof. These documents indicate that both plaintiff and defendant claim under a common grantor, one Edgar Escoe. That on the 29th day of April, 1969, Edgar Escoe along with Verner Howington purchased from one Patricia G. Allen a tract containing 29.136 acres of land in the 255th District, G.M., of Jackson County, Georgia, according to a plat of same prepared by James Flanders, dated March 4, 1969 and which tract was bounded on the north by other lands of Patricia G. Allen, and lands of the Dunson estate; the east by a gully; on the south by an unpaved county road; on the west by what is known as Water Works Road.

Howington and Escoe conveyed this identical property, and other property, to the Northeastern Banking Company by deed to secure debt dated 15 November, 1969 for a loan of $23,700. On the 24th day of December, 1970, Northeastern Banking Company and Verner Howington, jointly quitclaimed to Jack Escoe, who is the same person as Edgar Escoe, a one-acre parcel of land in the northeast intersection of Water Works Road and a dirt road known as Hood Mill Road, which leads from the Water Works Road to the home of Verner Howington. The quitclaim deed further describes the land by metes, courses and bounds. On the 22nd day of June, 1971, Verner Howington and Northeastern Banking Company jointly conveyed by quitclaim deed a second acre of land described by metes, courses and bounds, on the east side of Water Works Road and immediately north of the previous one-acre tract. The second deed ties to a starting point the intersection of Water Works Road with a dirt road known as Hood Mill Road, being the road which leads from Water Works Road to the home of Verner Howington. The second deed is also described by metes, courses and bounds. On the 12th day of July, 1971, Edgar Escoe, conveyed by deed to secure debt to plaintiff, four tracts of land, two of which, accurately describe each of the one-acre parcels hereinabove referred to. On the 24th day of May, 1974, the plaintiff foreclosed the deed to secure debt from Edgar Escoe to it and sold the four tracts of real estate therein described to the intervenors. There was a judgment of record confirming that sale under power issued by the Superior Court of Jackson County, Georgia. On the 21st day of May, 1974, the intervenors made and executed to the plaintiff, a deed to secure debt, conveying those same four tracts of real estate for an indebtedness of $78,500.

Plaintiff introduced in evidence a plat prepared by the Venable Brothers, Surveyors, outlining the two one-acre tracts in dispute, in which they located on the plat as being in the northeast intersection of Water Works Road, and a road which they designated as Hood Mill Road.

The documents introduced in the case by the defendant, prior to the close of plaintiff's evidence, included a general highway map of Jackson County,

Georgia, a warranty deed dated 2 February 1972 wherein Verner Howington conveyed to Jack Escoe, his one-half undivided interest in a 29.136 acre tract, per plat of James Flanders, dated March 4, 1969, recorded in plat book 6, at page 56, Jackson County public deed records. Also, a warranty deed dated July 7, 1972 from Jack Escoe to James A. Ryder conveying the same 29.136 acres of land. Also, a warranty deed from James A. Ryder to Beverly-Lynn Woods, Inc., dated the 5th day of October, 1972 conveying other property and the identical 29.136 acres of land, plat book 6, page 56. Also, a warranty deed from Beverly-Lynn Woods, Inc. to John B. Adams and Alexander Vandergrift dated the 6th day of March, 1974, conveying 27.26 acres of land per plat of the same prepared for James Ryder by James M. Paul and recorded in plat book 9 at page 202, Jackson County Public deed records. This conveyance and the plat omitted from both a tract in the southwest corner which would be the northeast intersection of Water Works Road, and an unnamed county paved road overlapping in part the two acres in dispute. Also introduced was a warranty deed from Beverly-Lynn Woods, Inc. to Alexander Vandergrift dated March 6, 1974 conveying a parcel of land in the northeast intersection of Water Works Road and an unnamed county road leading east therefrom referred to as one of two parcels of Jack Escoe, recorded in plat book 9 at page 202, Jackson County Records. Also introduced was a plat of the property of A. J. and Patricia Allen dated March 4, 1969 prepared by James Flanders and recorded in plat book 6 at page 56, which outlined a tract containing a total of 29.136 acres and recorded in plat book 6 at page 56, Jackson County Public Records.

Besides the documents, plaintiff offered in evidence the testimony that when Escoe owned the property, he decided to construct a grocery store and a laundromat, obtaining a commitment from plaintiff to finance construction. He then obtained a release from his then mortgage holder Northeastern Banking Company on the tract on which the store building was to be placed. The bank first released one acre and then a second acre immediately north thereof. An officer of the bank identified the land in question from the plat prepared for

the plaintiff by Venable and previously introduced in evidence. The plaintiff also introduced undisputed evidence that the county road along the south side of the two-acre tract was the road leading from Water Works Road to the home of Verner Howington. All deeds in plaintiff's chain of title, after the two acres were cut off, made this reference. Although plaintiff's deed to secure debt from Escoe to the two acres was properly recorded on the 15th day of July, 1971 in deed book 5-S, at page 213, Jackson County public deed records, Escoe did on the 2nd day of February, 1972, purchase from his co-owner Verner Howington, the latter's one-half interest in and to the original 29.136 acre tract, without mentioning or deducting the two acres previously conveyed to plaintiff on July 12, 1971 by deed to secure debt. Escoe in turn made a deed to the whole 29.136 parcel to James A. Ryder on the 7th day of July, 1972. Ryder then conveyed the whole tract to Beverly-Lynn Woods, Inc. The next link in the chain is from Beverly-Lynn Woods, Inc. to John B. Adams and defendant, wherein only 27.26 acres were conveyed, but the omitted portion does not coincide by exact measurements with the two acres which Escoe had previously conveyed to plaintiff. Still later defendant obtained a deed from Beverly-Lynn Woods, Inc. to a tract approximating two acres of land and substantially overlapping the disputed two acres. The issue in dispute at the trial, therefore, concerned who owned the two-acre tract of land. All conveyances indicated that the land was on the east side of Water Works Road. The principal question in dispute is whether or not the south boundary of the tract was in truth what is known as the Hood Mill Road, or the road leading from Water Works Road to the home of Verner Howington. The deeds in plaintiff's chain of title all describe the property as located approximately three miles south of Commerce.

Defendant having made a motion for directed verdict upon close of plaintiff's evidence, and that motion having been granted by the court, we must determine now whether or not considering all the evidence presented at the time, plaintiff had proved a case sufficient for a jury's determination.

We conclude that it had, and the trial judge, in

directing a verdict against the plaintiff, committed error. All subsequent proceedings in the case after that point are nugatory and must be set aside.

1. A motion for a directed verdict may be made at the close of the evidence offered by an opponent. If there is no conflict in the evidence as to any material issue and the evidence introduced with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed. Code Ann. § 81A-150 (a). The rule as stated above, purports to set forth the standard for a directed verdict long recognized in this state. Thus, "it is error to direct a verdict unless the evidence *demands* the particular verdict and fails to disclose *any* material issue for jury resolution." (Emphasis supplied.) *Humble Oil &c. Co. v. Mitchell,* 230 Ga. 323, 326 (197 SE2d 126) (1973). In directing a verdict the court must consider the evidence in the light most favorable to the party against whom the verdict is asked to be directed. *Murray v. Gamble,* 127 Ga. App. 855 (195 SE2d 461) (1973). It is, therefore, error for the court to direct a verdict where conflicts exist which would necessitate a jury's resolution.

2. In actions in ejectment or suits regarding title to land the plaintiff's right to recovery or relief depends upon the strength of his own title to the realty involved, not the weakness of his opponents. The plaintiff must trace his title back to the government unless he can bring himself within the operation of the "common grantor" rule, in which case, it is not necessary for the plaintiff to show title back of such common grantor. Code Ann. § 33-101; *Sinclair v. Friedlander,* 197 Ga. 797 (30 SE2d 398) (1944).

When a plaintiff establishes and relies upon the common grantor rule, he opens his chain of title derived therefrom to any attack which the defendant may find available. Thus, the defendant may show that the plaintiff did not acquire the title of the common grantor, or that plaintiff's title from the common grantor is defective or that the plaintiff has parted with his title. Further, the defendant may show that he has superior title from the common grantor in which case he will prevail. *Smith v. Welch,* 212 Ga. 345 (92 SE2d 297) (1956).

In the present case, counsel for the parties stipulated that certain documentary exhibits would be admissible in

evidence without further proof. These documents indicate that a conflict exists in regard to title to the contested property and that both plaintiff and defendant claim title through a common grantor. Under the common grantor rule, these documents having been introduced into evidence, there is no need for either plaintiff or defendant to show title back of the common grantor. A bona fide dispute is also illustrated by the documents.

Had plaintiff failed to show title back to a common grantor his proof would have been defective and would have demanded a directed verdict for the defendant. However, plaintiff, having relied upon the "common grantor" rule, and having introduced sufficient evidence showing good title from the common grantor through subsequent deeds together with other evidence introduced, the burden shifted to defendant at the close of plaintiff's case to prove his superior title. Defendant not yet having shown superior title it was error for the court to direct a verdict in defendant's favor at the close of plaintiff's case. The question of superior title and the location of the property were material issues in conflict which should have been resolved by the jury.

3. Although unnecessary for the disposition of the present case, we deem it appropriate to discuss the effects of defendant's responsive pleadings in that they will frame the issues to be resolved by the jury upon a trial of the case. Subsequent to the filing of plaintiff's complaint for declaratory judgment, the defendant filed responsive pleadings wherein he denied the allegations contained in paragraphs 7 and 8 of plaintiff's complaint. In doing so, the defendant denied that he had made claim to the property, that he had legal title to the property, and that he had filed the complaint in equity in the Superior Court of Clarke County, being Action No. 26227, naming as defendants the plaintiff and intervenors in the present case.

The defendant simultaneously filed a counterclaim in which he attached as an exhibit and sought to incorporate the allegations contained in paragraphs 5 through 14 of defendant's complaint in equity, Civil Action No. 26227, filed in the Superior Court of Clarke County, Georgia. By paragraph 10 of that complaint

defendant alleged that the plaintiffs were "wrongfully making claims against the property" of the defendant. Defendant further alleged in paragraph 6 that a case of actual controversy did exist and that a declaratory judgment would be "necessary to settle and afford relief to the defendant from uncertainty and insecurity with respect to rights and status of the property described."

When a complaint is filed against a defendant it is necessary that he file defensive pleadings so as to avoid default and the rendition of a judgment against him. See Code Ann. §§ 81A-112, 81A-155 (a). In compliance with the general rules of pleadings set forth in Code Ann. § 81A-108 (b), the defendant "shall admit or deny the averments upon which the adverse party relies . . . Denials shall fairly meet the substance of the averments denied. Where a pleader intends *in good faith* to deny only a part or a qualification of an averment, he shall specify so much of it as is true and material and shall deny only the remainder." (Emphasis supplied.) Although under Code Ann. § 81A-108 (e) (2) a party, whether acting in his own behalf or by and through counsel, is granted substantial flexibility in framing his defensive pleadings, he is at all times subject to the moral and professional obligation of honesty and good faith set forth in Code Ann. § 81A-111 (CPA Rule 11). Rule 11 requires a party to certify by his signature that to his knowledge there are good grounds to support the allegations he has presented in his pleading and that none of his assertions have been interposed for delay. The last sentence of Code Ann. § 81A-108 (e) (2) constitutes an express reminder of these duties. See also Arena v. Luckenbach S. S. Co., 279 F2d 186, cert. den. 364 U. S. 895 (CA 1 1960).

In responding to plaintiff's complaint, defendant Vandergrift denied that a complaint in equity had been filed in the Superior Court of Clarke County. In filing his counterclaim, however, he made a contrary admission to this fact. Defendant similarly denied that he made a claim against the contested property or that he had legal title to said property; however, in his counterclaim, he petitioned for a judgment declaring his rights in regard to the property, claiming that a controversy did in fact exist as to title. Defendant cannot, in good faith, deny and then

make an inconsistent admission as to averments that he knows are true. In such circumstances the allegations will be admitted. See *Bateman v. Small,* 24 Ga. App. 244 (100 SE 573) (1919); *Helmer v. Wilson & Co.,* 32 Ga. App. 435 (123 SE 901) (1924).

For these reasons we find the allegations contained in paragraphs 7 and 8 to be deemed admitted. These paragraphs having been admitted it is clear that a controversy did exist, one that should have been left for the jury to resolve.

4. There are circumstances where a defendant is not in a position to dogmatically deny or admit facts charged in the plaintiff's complaint. Such facts, though charged to be within his knowledge, may not actually be so. Under such circumstances, the law does not require the defendant to undertake to answer a matter upon which he has neither knowledge nor information.

Under our Civil Practice Act, "in order to take advantage of lack of information and knowledge, the defendant must allege that he is without knowledge or information *sufficient to form a belief* as to the truth of an averment. That he may not have sufficient information to permit him to make an express denial or an express admission is no longer the requirement. He must now allege that he lacks knowledge or information sufficient for him to *form a belief* as to the truth of an averment rather than be absolutely certain thereof." *Consolidated Pecan Sales Co. v. Savannah Bank &c. Co.,* 122 Ga. App. 536 (177 SE2d 808) (1970); Code Ann. § 81A-108 (b).

A denial of knowledge or information requires that the party not only lack first-hand knowledge of the necessary facts involved but also that he lack information upon which he reasonably could form a personal belief concerning the truth of his averments. The privilege to so plead is subject to the requirements of honesty in pleading set forth in Code Ann. § 81A-111 and thus the principle of Code Ann. § 81A-108 (b) will not apply if the fact as to which want of knowledge is asserted is to the knowledge of the court so plainly and necessarily within the defendant's knowledge that his averment of ignorance must be palpably untrue. *Stuckey's Carriage Inn v. Phillips,* 122 Ga. App. 681, 691 (178 SE2d 543) (1970).

"Normally, a party may not *assert* a lack of knowledge or information if the necessary facts or data involved are within his knowledge or easily brought within his knowledge, a matter of general knowledge within the community, or a matter of public record." 5 Wright & Miller, Federal Practice and Procedure: Civil § 1262 (1969).

The allegations contained in paragraphs 4, 5 and 6 of plaintiff's complaint alleged that the plaintiff had sold the contested property to the intervenors by virtue of a power of sale contained in the security deed from Edgar Escoe, that the court had confirmed the sale, and that the plaintiff had made a loan to the intervenors, had accepted as security the property described in the complaint and had received as security a deed to secure debt of which plaintiff is grantee.

The defendant responded to these averments by stating that he could neither admit nor deny the allegations "for want of sufficient information upon which to form a belief." However, in defendant's counterclaim for declaratory judgment, which incorporated the allegations contained in several paragraphs of his complaint previously filed in the Superior Court of Clarke County, defendant Vandergrift alleged that the intervenors had bought the contested property at a sale under power in the security deed from Edgar Escoe and that North Georgia held as grantee a security deed conveying the contested property as security for the debt therein described.

The averments of defendant's counterclaim are sufficient enough for us to conclude that the defendant did have knowledge or sufficient information to form a belief as to the truth of the averments contained in plaintiff's paragraphs 4, 5 and 6, and, therefore, upon trial these paragraphs should be deemed admitted because of defendant's failure to comply with the standards set forth in Code Ann. § 81A-108 (b).

5. For the reasons as herein stated above, we reverse the lower court's grant of a directed verdict in favor of defendant. The subsequent proceedings resulting in a verdict and judgment in favor of defendant on this counterclaim and in favor of intervenors on their claims

are accordingly set aside and shall be retried with plaintiff's case. Upon retrial of this case the court shall consider paragraphs 4, 5, 6, 7 and 8 of plaintiff's complaint to be deemed admitted by the defendant.

*Judgment reversed with direction. All the Justices concur.*

SUBMITTED MAY 6, 1977 — DECIDED SEPTEMBER 8, 1977 — REHEARING DENIED SEPTEMBER 28, 1977.

*Davis, Davidson & Hopkins, Jack S. Davidson, Robinson, Harben, Armstrong & Millikan, Sam S. Harben, Jr.,* for appellant.

*Griffeth & Henry, David W. Griffeth, Cook, Noell, Bates & Warnes, James C. Warnes,* for appellees.