FINAL COPY
294 Ga. 415

S13A1807.  MATHEWS et al. v. CLOUD et al.

BENHAM, Justice.

This case arises out of a dispute over title and right of possession of certain real property in Randolph County.  In essence, the dispute involves the location of the boundary between two adjoining parcels.  The facts construed in the light most favorable to the prevailing party show that Marion A. Cloud, now deceased, acquired title by warranty deed dated October 31, 1956, which purported to grant to her the whole of Land Lot 253, along with other adjoining Land Lots, in the Ninth Land District of Randolph County.  The warranty deed referenced a survey plat that the evidence shows was initially prepared in 1946 by T. R. Mathews, also now deceased, the owner of adjoining Land Lot 254 immediately south of the Cloud property.  The record shows the plat was revised in 1953 and recorded in 1954 by Mathews, and it reflects certain metes and bounds measurements of Land Lot 253.  T. R. Mathews acquired title to the property located within Land Lot 254, along with other property, by quitclaim deed dated July 7, 1934.  That deed, however, contains a vague description with no measured boundaries, and it references an equally vague security deed and

sketch that, according to expert witness testimony, does not serve as an acceptable plat for purposes of establishing boundaries. A pond formed by a dam is located near the southern portion of Land Lot 253. The issue in this case is whether the pond in its entirety and the land immediately to the south and west of it is owned by the Cloud estate or whether the southern portion of the pond, along with the disputed land around the pond, is owned by the heirs of Mr. Mathews.

With respect to possession of the disputed land, members of the Mathews family claim they used the southern portion of the pond and the disputed land around the pond over a period of years, but the Cloud heirs dispute that claim. The Clouds contend that, with the exception of a dispute in 1967 over whether a timber crew hired by the Mathews family to cut trees on Lot 254 had encroached on the Cloud property, there was no dispute over the possession of the property until after the deaths of Mrs. Cloud and Mr. Mathews. Claiming that the Mathews heirs began encroaching onto Lot 253 in 2008, the Cloud estate filed suit in 2010 seeking declaratory judgment and injunctive relief and seeking award of title to all of Land Lot 253 pursuant to record title or, alternatively, under the doctrine of title by prescription or the doctrine of

2

adverse possession. The case was tried to a jury which returned a verdict in favor of the Clouds with respect to the disputed property. The trial court then entered judgment in favor of the Clouds, declaring the border between the Cloud property and Mathews property to be defined by certain metes and bounds reflected in a survey map entered into evidence and referred to at trial by the surveyor as a status print. Those measurements were based upon the plat referenced in the Cloud deed. The judgment also enjoined the Mathews heirs from trespassing upon the property. The Mathews heirs now appeal. For the reasons set forth below, we affirm.

1. At the close of the Cloud estate's case, the Mathews heirs' attorney filed a motion for directed verdict with respect to the Cloud estate's claim for relief under record title. The Mathews heirs assert the trial court erred in denying the motion, which they argue resulted in the jury being unnecessarily charged with determination of factual issues regarding this claim for relief. A directed verdict may be granted only where the evidence as to any material issue "demand[s] a particular verdict . . . ." OCGA § 9-11-50 (a). In reviewing whether the trial court erred in denying a motion for directed verdict, "we must construe the evidence in the light most favorable to the prevailing party."

*Rabun County v. Mountain Creek Estates, LLC*, 280 Ga. 855, 858 (2) (632 SE2d 140) (2006); see also *Ga. Power Co. v. Irvin*, 267 Ga. 760 (1) (482 SE2d 362) (1997) (applying the directed verdict standard of review to an action for declaratory judgment regarding claim of title to real property). The record reflects the Clouds introduced into evidence a certified copy of the 1956 deed to Marion A. Cloud. Pursuant to OCGA § 44-2-22, a prima facie case respecting title to land is established upon showing good record title for a period of 40 years. Because the deed to Marion A. Cloud established record title for a period exceeding 40 years, a prima facie case of right to relief pursuant to record title was thus established. See *Costello v. Styles*, 227 Ga. 650, 651-652 (182 SE2d 427) (1971).

Relying upon *Brooks v. Green*, 277 Ga. 722 (594 SE2d 629) (2004), the Mathews heirs assert that the Clouds failed to make a prima facie case of good record title because they failed to establish that Mrs. Cloud's grantor was vested with good title.[1] *Brooks* is distinguishable as the plaintiff in that case was

---

[1] There was some ambiguity in the chain of Mrs. Cloud's title with respect to whether previous written titles included the approximately fifteen acres covered by the pond. The title conveyed to Mrs. Cloud and recorded in 1956, however, expressly purported to convey all the land in Land Lot 253, as defined by the survey referenced in the deed, which includes the pond.

required to establish his grantor had good record title because he acquired his own title less than 40 years before the date he filed his petition for ejectment. Id. at 723 (1). In the current case, the deed by which the Clouds claimed record title was, itself, more than 40 years old. Relying upon this Court's discussion of the common grantor rule in *North Ga. Production Credit Assn. v. Vandergrift*, 239 Ga. 755 (238 SE2d 869) (1977), the Mathews heirs assert that the Clouds were required to track their title back to the government or a common grantor of the opposing party, which they failed to do. In the *Vandergrift* case, however, the plaintiff relied only upon the common grantor rule to establish its prima facie case of title to the disputed property because, as in the *Brooks* case, the plaintiff acquired title less than 40 years prior to filing suit. Id. at 761 (2). Pursuant to OCGA § 44-2-22, however, in order to make out a prima facie case of good record title, a party must no longer prove a chain of title from the State or a common grantor so long as good record title for a period of 40 years is established. See *Shippen v. Cloer*, 213 Ga. 172 (3) (97 SE2d 563) (1957). In an action of ejectment, "[a]fter the plaintiff has established his prima facie case by showing a good record title for forty years, the burden of proceeding is upon the defendant, who must introduce evidence to rebut the

plaintiff's prima facie case . . . ." Id. at 174. In this case, the trial court did not err in denying the motion for directed verdict because the Clouds presented evidence of good record title for a period of 40 years, thus establishing a prima facie case for prevailing on their record title claim.

2. The Mathews heirs assert the trial court erred in denying their motion for new trial because the verdict was not supported by the evidence. The verdict does not indicate whether the jury found in favor of the Clouds on their claim of record title or under their alternative claims of title by prescription or adverse possession. But the Mathews heirs claim the evidence proved they held superior record title and that no evidence was presented to support actual possession of the disputed property by the Clouds sufficient to establish prescriptive title or adverse possession by the Clouds that would defeat the Mathews title. In fact, the evidence is sufficient for the jury to find superior record title to the disputed land to the Clouds. The 1956 Cloud deed referenced a survey plat that described the boundary between the Cloud property and the Mathews property with certain metes and bounds and measurements. The description of the property conveyed in the 1934 Mathews deed was vague and indefinite, referring to 300 acres in the Ninth Land District of Randolph County but not to the Land Lots that were

6

being conveyed. The deed referenced a security deed executed by the grantor and the deed book in which it was recorded and stated that the land was better described in the security deed, but the survey referenced in that document appears to be only a tracing sheet which did not set forth metes and bounds. Accordingly, the Mathews deed was not sufficient to establish superior record title to the disputed land because it provided insufficient means to determine the boundary between the Mathews property and Cloud property. See *Lutrell v. Whitehead*, 121 Ga. 699 (1) (49 SE 691) (1905) (a deed that contained a vague description with no metes and bounds was deemed too indefinite for the deed to convey record title to disputed land).

Alternatively, the evidence was sufficient for the jury to find the Clouds were entitled to judgment in their favor pursuant to a theory of prescriptive title by adverse possession under color of title. The record is replete with testimony and other evidence from which the jury could find that the Clouds were in possession of the disputed property continuously from 1956 to the time the complaint was filed. In addition to many other facts, the evidence showed that the dam creating the pond broke in 1994 resulting in the pond being drained. It was undisputed that the Clouds entered onto the disputed land in 1995 to

disturb the land in order to reconstruct the dam at substantial cost borne solely by the Clouds and that the Mathews heirs raised no objection to this act of actual possession and ownership.[2] The work on the dam would have been visible from the public road that also crossed the Mathews property. This evidence, alone, is sufficient to establish open and notorious occupation to put the world on notice of actual possession of the disputed land. See *Cheek v. Wainwright*, 246 Ga. 171 (1) (269 SE2d 443) (1980) (planting trees in a row along a public road gives clear and lasting notice that someone is exercising possession by even changing the nature of the real estate). The Mathews heirs, however, argue that reconstruction of the dam does not show actual possession of all of the disputed area. Importantly, however, "[p]ossession under a duly recorded deed shall be construed to extend to all the contiguous property embraced in such deed. . . . " OCGA § 44-5-167. Consequently, the acts of the Cloud family evidencing actual possession of the land extended to the property line set forth in the Cloud deed even though the evidence showed some of the disputed land was wild land that was not enclosed or cultivated.

---

[2] "Actual possession of lands may be evidenced by enclosure, cultivation, or any use and occupation of the lands which is so notorious as to attract the attention of every adverse claimant and so exclusive as to prevent actual occupation by another. . . . " OCGA § 44-5-165.

Ample evidence was presented of the Cloud family's actual or constructive possession of the entirety of the property described in their deed well in excess of the time period required to establish prescriptive title by adverse possession pursuant to OCGA § 44-5-164.[3] Contrary to the assertions of the Mathews heirs, constructive possession of the entirety of the tract described in the Clouds' title is not defeated by OCGA § 44-5-166 (b).[4] The deed by which the Mathews heirs claimed title to the disputed land was vague and set forth no measured boundaries with respect to the property line between Lots 253 and 254, and thus, the evidence does not establish they also constructively possessed the disputed land by virtue of their title.

---

[3]

> Possession of real property under written evidence of title in conformance with the requirements of Code Section 44-5-161 for a period of seven years shall confer good title by prescription to the property against everyone . . . provided that, if the written title is forged or fraudulent and if the person claiming adverse possession had actual notice of such forgery or fraud when he commenced his possession, no prescription may be based on such possession.

OCGA § 44-5-164. Here, no issue of fraud or forgery with respect to the Cloud title was raised. Sufficient evidence of all the elements required for possession to be the foundation of prescriptive title, as set forth in OCGA § 44-5-161 (a), was presented by the Clouds in this case. As noted herein, with respect to the only contested element of adverse possession, there was sufficient evidence for the jury to find the possession by the Cloud heirs had been "public, continuous, exclusive, uninterrupted, and peaceable" since at least 1995. See OCGA § 44-5-161 (a) (3).

[4] OCGA § 44-5-166 (b) provides: "When land is included in the boundaries of more than one tract so that adjacent owners are in constructive possession of the same land, no prescription shall arise in favor of any such owners."

"One of the most basic rules of appellate review is that, if there is any evidence to support the jury's verdict and court's judgment, the judgment will not be disturbed on appeal." *Scott v. Scott*, 243 Ga. 472, 473 (254 SE2d 852) (1979); see also *Wallis v. Porter*, 290 Ga. 218 (1) (719 SE2d 419) (2011) (applying this rule to the review of an order denying motion for new trial in a case involving a boundary dispute). Because sufficient evidence was presented at trial to support the verdict under the Clouds' claim of superior title or their claim of title by prescription arising out of adverse possession under written evidence of title pursuant to OCGA § 44-5-164, the trial court did not err in denying the motion for new trial.

3. Based upon a discussion between the judge and counsel for the parties, the judge submitted three alternative verdict forms to the jury for them to use at their discretion. One was a form that asked the jury to establish the property line between Lots 253 and 254, one permitted the jury to fashion the language and terms of the verdict as they saw fit, and one was a form that posed three questions to the jury, asking them to award either to plaintiff or defendant three areas of disputed land — the pond, the property west of the pond, and the property south of the pond. The jury returned a verdict on the form that asked

them to make an election between the plaintiff and defendant regarding the three listed areas of land in dispute and the jury placed an "X" on the line next to the word "Plaintiff" with respect to each of the three areas. Reciting that the jury had found for the plaintiffs, the court entered judgment in favor of the Clouds, stating:

> Plaintiffs are hereby awarded all title, right, ownership and exclusive use of the pond once known as Sealy's Mill Pond located in Land Lot 254 in the 9th Land District of Randolph County, Georgia, and all land in Land Lot 253 . . . located west and south of said Sealy's Mill Pond with said Land Lot's south border being at S 89° 16' 20" E (1495.81'), N 89° 16' 20["] W (1621.42'), as shown on that certain plat entitled "Status Print, Survey for: Estate of Marion A. Cloud, Estate of W.O. Cloud and T. R. Mathews, Jr., et al" dated 04-23-2008, as revised 08-23-2010, which was entered into Evidence in the trial as Exhibit P-5, incorporated herein for all purposes by this reference . . . ."

The attorney for the Mathews heirs objected to the form of the verdict. On appeal, they assert the court erred in making a substantial change to the verdict by arbitrarily establishing a boundary line even though the evidence concerning the location of the line was conflicting and the jury made no specific determination locating the line.

"In a proper case, the superior court may mold the verdict so as to do full justice to the parties in the same manner as a decree in equity." OCGA § 9-12-5.

11

After the jury has been disbursed, however, the court may not make a change to the substance of the verdict. OCGA § 9-12-7. "After the dispersal of the jury the judge has no power either to add to or take from their findings, and has not the power, by amendment or reformation, to supply substantial omissions or make substantial changes in the verdict as rendered by the jury." *Fried v. Fried*, 208 Ga. 861, 864 (3) (69 SE2d 862) (1952); see also *Mayo v. Keaton*, 78 Ga. 125, 126 (2 SE 687) (1887). In this case, the jury made no express finding of the location of the boundary. But it is obvious the jury based the verdict either on a finding of superior record title based upon the Cloud deed or a finding that the Clouds had established prescriptive title because they had constructively possessed the entirety of the tract described in the deed. Under either theory, the judgment establishing the boundary line between the parties' respective property does not substantively change the verdict but simply molds the verdict to do justice to the parties.

Judgment affirmed. All the Justices concur.

Decided January 21, 2014.

Title to land. Randolph Superior Court. Before Judge Bishop.

<u>James E. Friese</u>, for appellants.

<u>John G. C. Durham, Jared L. Roberts</u>, for appellees.