**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN, P. J., and MCMILLIAN, J.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 16, 2017**

# In the Court of Appeals of Georgia

A16A1692. VIF/VALENTINE FARMS BUILDING ONE, LLC et al. v. WRIGHT.

MCMILLIAN, Judge.

This case arises out of a boundary dispute involving a 60.85-acre tract of land (the "Tract") with alleged boundaries once marked by hog wire fencing. This is the third appearance of this case in this Court, and the facts underlying the dispute are fully summarized in this Court's opinion in the first appeal. *Wright v. VIF/Valentine Farms Bldg. One, LLC*, 308 Ga. App. 436, 436-37 (1) (708 SE2d 41) (2011) ("*Wright I*").[1] We give a brief background here to identify the parties and the issues on appeal.

---

[1] In the second appeal, this Court vacated the trial court's order granting summary judgment on Wright's slander of title claim because it was entered while the first appeal was pending. We remanded the case with the instruction that the trial court reconsider its ruling in light of the opinion in *Wright I*.

Prior to 1992, Dr. Herbert E. Valentine, Jr. and the family of J. B. Wright owned large contiguous tracts of rural property in Jackson County. *Wright I*, 308 Ga. App. at 436 (1). This litigation arises out of a dispute regarding the proper boundary between these two properties, which we described in *Wright I*:

> In dispute is the position of the boundary running from [a] beech tree stump to an agreed southern endpoint. The appellees contend the boundary continues on a precisely straight line for 717.10 feet from the beech tree stump to the southern endpoint, and that, as late as the 1990s, a hog wire fence existed along this line. Wright alleges that errors in the Valentine chain of title and associated surveys fail to reflect that beginning at the beech tree stump, the property line runs along or parallel to a different hog wire fence built by his father in the 1950s that curved to the west, carving out a 0.86-acre, crescent-shaped area ending at the southern endpoint [the "Disputed Property"], and that this fence existed until the defendants destroyed it, which precipitated this litigation.

Id.

In 1992, Valentine sold all of his property to Possum Creek Properties, L.P. ("PCP"), a Valentine family-controlled limited partnership. *Wright I*, 308 Ga. App. at 437. PCP decided to use this property to create an industrial park, and to that end, it entered into an agreement to sell a portion of the land, i.e., the Tract, which

encompasses the Disputed Property,[2] to Grove Street Partners, LLC (GSP). GSP later assigned its interest in the sales agreement to Valentine Farms Land, LLC ("VFL"), and PCP conveyed the Tract to VFL in 2005. Id. VFL, in turn, conveyed its interest in the Tract to VIF/Valentine Farms Building One, Inc. ("VIF"). Id.[3]

In October 2007, after development of the Tract began and a warehouse was constructed on the property, Wright filed the complaint[4] in this case against the Valentine Interests and WDI, alleging, inter alia, that the warehouse encroached on his property. *Wright I*, 308 Ga. App. at 438 (1). After the suit was filed, on December 28, 2007, VIF transferred its interest in the Tract to First Industrial Investment, Inc. ("FI, Inc."), and Wright subsequently added FI, Inc. as a defendant in the lawsuit. Id.

---

[2] The conveyed property's boundary lines "did not recognize and extended past the hog wire fence asserted by Wright" as the traditional and proper boundary between his property and the old Valentine property. *Wright I*, 308 Ga. App. at 437.

[3] Valentine's estate was substituted for Valentine as a party defendant in this case following his death on January 6, 2009. The estate and PCP will be referred to collectively herein as the "Valentine Interests." In the first appeal, this Court referred to GSP, VFL, and VIF, none of which are related to or controlled by the Valentine family, collectively, as the "Warehouse Development Interests." 308 Ga. App. at 437 (1). In this appeal, we shorten that reference to "WDI." We will refer to the Valentine Interests and WDI collectively as the "Defendants."

[4] Wright dismissed an earlier lawsuit without prejudice before filing the complaint in this litigation. *Wright I*, 308 Ga. App. at 437-38 (1).

In *Wright I*, Wright appealed the trial court's order granting summary judgment to the Valentine Interests. The trial court found that because the Valentine Interests had relinquished title and control of the Tract, they could not be liable for any trespass on Wright's land by their successors in title. 308 Ga. App. at 438. This Court reversed the grant of summary judgment, however, finding that because there was some evidence that the Valentine Interests had sold land they did not own, a jury issue existed as to whether they could be liable in trespass. Id. at 441 (1).

Wright also contended that the trial court erred in issuing two orders imposing sanctions on him for spoliation of evidence. The record showed that Wright had admitted performing work on the Disputed Property, including digging in the area with a backhoe and removing some hog wire fencing into a nearby debris pile, in contravention of an order of the trial court, even though he knew that the hog wire fence and natural features and contours of the property were important evidence in the boundary line dispute. *Wright I*, 308 Ga. App. at 442 (2) (a). This Court affirmed the trial court's finding of spoliation, concluding that it was supported by some evidence and thus was not clearly erroneous. Id. at 443 (2) (a).

As sanctions for this spoliation, the trial court dismissed Wright's claims, including a claim for ejectment, against FI, Inc. *Wright I*, 308 Ga. App. at 443 (2) (b).

4

The trial court also ordered that "the jury be instructed as to a rebuttable presumption that the existence of the underbrush, vegetation and hog wire fence would have been harmful to Wright in connection with the Warehouse Development Interests' defenses." Id. This Court upheld the trial court's imposition of these sanctions, finding that the trial court "properly considered the relevant requirements for applying sanctions and weighed the prejudice to the defendants against Wright's culpability." Id. at 444 (2) (b).

In this appeal, the Valentine Interests and WDI appeal the trial court's denial of their joint motion to limit Wright's claims for damages. Defendants assert that the dismissal of Wright's claims against FI, Inc. should also limit his claims for damages against them, asserting that (1) Wright's damages for trespass[5] should be limited to the date the trial court dismissed his ejectment claim against FI, Inc.; (2) Wright should be precluded from recovering the cost of restoring trees on the Disputed Property "post-ejectment"; and (3) he should also be precluded from recovering

_____

[5] Although Wright also asserted a slander of title claim, following the remand from the second appeal, the trial court granted summary judgment on Wright's slander of title claim against the Valentine Interests and GSP. Wright did not appeal the order regarding GSP and although Wright cited the order regarding the Valentine Interests in his Notice of Appeal, he did not enumerate that ruling as error in his related appeal in this case.

5

mesne profits, or in the alternative, that the recovery of such profits should be capped as of the date his ejectment claim against FI, Inc. was dismissed. The trial court construed this portion of the Defendant's Joint Motion as a motion for partial summary judgment[6] and denied the motion on those grounds without explanation.

Our standard of review of the denial of summary judgment is well established.

Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. In our de novo review of the grant [or denial] of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010).

Defendants describe the gist of their motion to limit Wright's damages as asserting that

the Spoliation Order judicially established the boundary line between the properties by denying [Wright's] right to challenge it as to the party that he identified in [this case] as the Disputed [Property]'s current

---

[6] The Defendants invited the trial court to treat the Joint Motion as one for summary judgment to the extent it considered matters outside the pleadings, and Wright submitted additional documentation as exhibits to his brief in opposition.

6

owner, and because that is true, no trespass could have possibly occurred after the claim to eject that defendant was dismissed.

The trial court entered the Spoliation Order, dismissing "all counts and claims for relief" against FI, Inc. based on Wright's willful spoliation of evidence on March 27, 2009, and on May 14, 2009, it entered a final order and judgment dismissing all claims against FI, Inc. with prejudice. This Court later affirmed those orders in *Wright I*. 308 Ga. App. at 444 (2) (b). The Defendants argue that the dismissal of Wright's ejectment claim prevented any claim for damages arising thereafter based on any assertion by Wright of an interest in the Disputed Property. We agree.

Under OCGA § 9-11-41 (b), a dismissal "operate[s] as an adjudication upon the merits unless the court in its order for dismissal specifies otherwise." Although the dismissal order in this case was issued as a sanction for spoliation of evidence, Georgia courts have held that orders dismissing claims or striking pleadings as a sanction for willful discovery violations function as an adjudication on the merits unless the order specifies otherwise. *Bagwell v. Bagwell*, 290 Ga. 378, 380 (721 SE2d 847) (2012) (dismissal of husband's petition for modification as a sanction for his failure to comply with discovery constituted an adjudication on the merits); *Georgia Cash America, Inc. v. Greene*, 318 Ga. App. 355, 358 (1) (734 SE2d 67) (2012) (trial

7

court's order striking arbitration defense for discovery violations was an adjudication on the merits); *Brantley v. Sparks*, 167 Ga. App. 323, 324 (306 SE2d 337) (1983) (sanction of dismissal of complaint based on a finding of willful violation of discovery order operates as an adjudication on the merits). We see no reason to treat a dismissal based on spoliation any differently.

Therefore, because neither the Spoliation Order nor the judgment issued thereon provide otherwise, the dismissal of Wright's claims against FI, Inc. operated as an adjudication on the merits of his ejectment claim. And in Georgia, "[a] judgment in ejectment shall be conclusive as to the title between the parties thereto unless the jury awards the plaintiff less than the fee." OCGA § 44-11-13. Thus, the entry of judgment on the Spoliation Order established title in the Disputed Property in favor of FI, Inc., thus eliminating Wright's claim of right to the property as of May 14, 2009, and we find that Wright has no claim for damages against the Defendants arising after that date.

Moreover, it is well settled that a plaintiff in an ejection action must establish that he has title to the disputed property in order to set out a prima facie case. See *Mathews v. Cloud*, 294 Ga. 415, 417 (1) (754 SE2d 70) (2014) (plaintiff carried burden of showing good record title to establish prima facie ejectment case); *Evans*

8

*v. Elder*, 219 Ga. 566, 567 (134 SE2d 803) (1964) ("It is fundamental that the plaintiff must, in order to recover, show that the legal title, or its equivalent, as well as a right of entry at the time the suit is filed, rests in him[.]") (citation and punctuation omitted); OCGA § 44-11-1 ("A plaintiff in ejectment must recover on the strength of his own title and not on the weakness of the defendant's title."). See also OCGA § 44-2-22 (a prima-facie case respecting title to land requires proof of good record title for a period of 40 years). Since Wright has no ground to assert a claim for ejectment, it necessarily follows that he cannot pursue a claim for "post-ejectment" damages for the replacement of trees on the Disputed Property.

Likewise, we find that Wright no longer has a claim for mesne profits, which is an element of damages that must be pled as a separate count in an ejectment action. See OCGA § 44-11-7 (a). Wright cites no authority to support a claim for mesne profits independent of a claim for ejectment, nor have we uncovered any. To the contrary, OCGA § 44-11-7 (b) provides that "[n]o plaintiff in ejectment shall have and maintain a separate action in his behalf for the recovery of mesne profits[7] which

---

[7] "Mesne profits" are "intermediate profits – that is, the profits which accrue between two given times, and is defined as the value of use or occupation of land during the time it is held by one in wrongful possession of it." 3 Ga. Jur. Property § 30:9 (updated March 2017).

9

may have accrued to him from the premises in dispute." See also 3 Ga. Jur. Property § 30:9 (updated March 2017) ("An action for mesne profits is available only when there has been an ouster of the plaintiff, as this is a prerequisite to an action in ejectment, and there can be no recovery or damages unless there is recovery of the land.").

Accordingly, we reverse the trial court's denial of the Defendant's Joint Motion as to Wright's claim for damages.[8]

*Judgment reversed. McFadden, P. J., concurs. Miller, P. J., concurs in judgment only.*

---

[8] Nothing in this opinion is intended to address other damages that Wright may still be able to recover on any remaining claims.

A16A1692. VIF/VALENTINE FARMS BUILDING ONE, LLC et

al. v. WRIGHT.

MILLER, Presiding Judge, concurring in judgment only.

While I concur with the result reached by the majority in this case, I do not agree with all that is said. Accordingly, I concur in the judgment only, and as a result, the majority's opinion is not binding precedent. See Court of Appeals Rule 33 (a).