## BRITT *v.* DAVIS.

Where a person wrote out and signed a paper in the form of an affidavit for the purpose of obtaining the issuance of a distress warrant, and then procured a justice of the peace to attest it by signing the jurat, but in fact no oath was taken or administered; and nothing was said about an oath or as to the truth of the statements contained in the paper, this constituted no lawful affidavit, and furnished no basis for the issuing of a distress warrant.

Submitted July 1, 1907.—Decided February 1, 1908.

Foreclosure of lien. Before Judge Spence. Turner superior court. September 11, 1906.

*J. B. Hutcheson,* for plaintiff in error.

*T. R. Perry* and *A. J. Davis,* contra.

LUMPKIN, J. A distress warrant was issued by J. F. Lunsford, justice of the peace, on September 28, 1905, in favor of D. H.

Davis against C. A. Britt, for rent. It was based on what appeared to be an affidavit made by A. J. Davis, attorney at law for D. H. Davis. This was drawn in the ordinary form, reciting, "Personally appeared before me," etc., and with the jurat in the words, "Sworn to and subscribed before me, this 28th day of September, 1905. [Signed] J. F. Lunsford, J. P." On the trial a verdict was rendered for the plaintiff. A motion for a new trial was refused, and the defendant excepted.

The only point made before us is whether, under the uncontradicted evidence, the paper purporting to be an affidavit was in fact sworn to, so as to furnish a legal basis for the issuance of a distress warrant. The point was raised in two ways: first, by a motion to dismiss the distress warrant; and second, under the general grounds of the motion for a new trial. The entire evidence bearing on this point was that of A. J. Davis, Esq., who testified as follows: "My recollection is that I wrote out the distress warrant, and Mr. Lunsford, the justice of the peace, was in Mr. Rouse's store. I wrote the paper in Col. Tyson's office, and went and got Lunsford, and I signed the paper in Col. Tyson's office. Mr. Lunsford witnessed the affidavit. I am not positive where Mr. Lunsford was when I signed the paper. I am not positive whether he was in the room or not; whether I signed the paper when I finished it. I know I went after him. I don't know whether I signed it in his presence or not; I am not positive about it. Mr. Lunsford was away when I wrote it. I went after him. I am not positive whether I signed it then and there where I wrote it, or signed it after the officer came in. I would not say positively which it was. I do not think there was an oral oath administered at the time I signed the affidavit. There was nothing said about an oath. My recollection is I wrote the paper and then went and got the justice of the peace, and he witnessed it. I told him I wanted him to witness that affidavit; that is what I went after him for, to get him to witness the affidavit and issue the distress warrant. My recollection is I told him I wanted to make that affidavit as a basis for a distress warrant. The officer understood I was swearing to the paper; I think that was his understanding, for I went to him for that purpose."

In order to procure the issuing of a distress warrant, the applicant, his agent or attorney, must make oath in writing as to the

sum claimed to be due for rent. Civil Code, §4818. Merely to write out a paper in the form of an affidavit and sign it is not sufficient, without more, to constitute the taking of an oath; nor is it sufficient that at some time after such a paper is signed a justice of the peace should sign the jurat. The jurat to an affidavit is that part of it, or addition to it, where the officer certifies that it was sworn to before him. 1 Enc. Pl. & Pr. 316. It seems to have been thought by some that the mere signing of the jurat by the officer, even though the person purporting to make it has signed the paper at a different time, and without any administration of an oath, or anything tantamount thereto, and sometimes even in the absence of the purported affiant, is sufficient. But this is a mistake. Whether an oath made to obtain the issuance of a distress warrant is sufficient may be tested by the question whether a conviction for perjury or false swearing could be predicated upon it, if what was stated were not true. The signature of the person claimed to be an affiant, accompanied by the jurat signed by the officer, is prima facie sufficient evidence that the oath was administered. But if in fact no oath was administered, a false certificate by the magistrate to that effect would not take the place of the administration of the oath. If the paper appears on its face to be regular, one who attacks it carries the burden of showing that it was not in fact legally executed. But if the evidence shows that no oath was administered, nor anything done which the law deems sufficient as amounting to the administration of an oath, the paper claimed to be an affidavit will not suffice as such, nor furnish a basis for the issuance of a distress warrant. If the evidence as to what took place is conflicting, the question is one of fact for submission to the jury. A statement under oath differs from unsworn statements, in that it is made under a solemnity which is supposed to affect the conscience; and where taken in connection with a legal proceeding, the maker is also subject to punishment for perjury, if the statement be untrue. It is therefore necessary that sworn statements should be distinguished from those which are unsworn, in the manner of making them. It would be unprofitable to enter into a discussion of the origin and nature of the administration of an oath, or of the religious sanctity, or the appeal to the Supreme Being, which has been said to characterize it; or to deal with the capacity of a witness at the present

day to testify regardless of religious belief, or the statutory allowance of an affirmation in lieu of an oath. Whether the affiant testifies in view of his responsibility to God or only to the criminal law, in either event what he does is something more than merely to sign a paper. See, on this subject, 1 Greenleaf on Evidence (16th ed.), §364; O'Reilly v. People, 86 N. Y. 154 (40 Am. R. 525). In the O'Reilly case it was said: "Where the prisoner handed to an officer, authorized to take and certify affidavits, an affidavit previously signed by him, and reciting that he had been duly sworn, and the officer affixed his own signature to the jurat without any words or formalities, held, that perjury could not be predicated of the transaction." In Matthews v. Reid, 94 Ga. 461 (19 S. E. 247), an attorney prepared an affidavit for the purpose of foreclosing a chattel mortgage, signed his name to it, and then laid it on the desk of the clerk of the superior court, at which the latter was sitting, the attorney at the same time remarking, "Here is an affidavit I want to swear to; I have already signed it; the facts stated in it are true." It did not appear that the clerk heard what the attorney said, but it did appear that no oath was formally administered, and that the clerk did not then nor till long afterwards sign the jurat. It was held that the affidavit was not duly made, and that the clerk had no authority to issue an execution thereon. The law has not prescribed any exact formula of words or specific ceremony which must be used in order to constitute a valid administration of an oath. Certain forms of expression are generally followed. But if the substance is present, a lack of literal compliance with form will not invalidate the oath. 1 Enc. Pl. & Pr. 324. In McCain v. Bonner, 122 Ga. 842, 846 (51 S. E. 36), after citing approvingly the case of O'Reilly v. People, 86 N. Y., supra, it was said: "If, however, the affiant, at the time of tendering the affidavit to the officer, uses language signifying that he consciously takes upon himself the obligation of an oath, and the officer so understands and immediately signs the jurat, this will amount to such concurrence of act and intention as will constitute a legal swearing. The acts of the officer and of the affiant must be concurrent, and must conclusively indicate that it was the purpose of the one to administer and the other to take the oath, in order to make a valid affidavit." In that case an affiant presented to the officer an affidavit previously signed by him, with the state-

ment that he was familiar with its contents, that what was therein contained was true, and that he swore to the same, and the officer immediately, on the faith of such declaration, affixed his official signature to the jurat. It was held that this was sufficient to indicate, not only that the affiant understood that he was taking an oath, but also that the officer likewise so understood, and that by presently signing the jurat he evidenced his intention to administer an oath.

Tested by the rule thus succinctly laid down, how stands the present case? On its face the affidavit appeared to be regular; but on the trial the uncontradicted evidence of the affiant showed, that he prepared the paper and probably signed it before he went to the magistrate, who was in the store of another person; that he then told the magistrate that he wanted the latter to witness that affidavit; and that "my recollection is I told him I wanted to make that affidavit as a basis for a distress warrant." But in the same connection he testified, "I do not think there was an oral oath administered at the time I signed the affidavit. There was nothing said about an oath." It does not even appear that he stated that what was written was true. In fact it is quite apparent from his own testimony that he wrote out the paper, signed it, and had the magistrate to attest it, without swearing to it, or without the sanction of an oath being invoked either by him or by the magistrate. In no way does this measure up to the test laid down in the case of *McCain* v. *Bonner,* supra. The witness stated that "The officer understood that I was swearing to the paper; I think that was his understanding, for I went to him for that purpose." The officer was not introduced as a witness. Objection was made to this statement; but as the ground of the motion for a new trial which is based upon it fails to show what objection was made, it can not be considered. Nevertheless the mere opinion of the witness that the magistrate understood he was swearing, because he went there for the purpose, can not avail, where his testimony as to what actually occurred shows that he did not in fact swear to the paper, and that there was nothing from which such an inference could legally be drawn.

We can not but deprecate the tendency to treat the taking of an oath as a mere technical formality, worthy of little attention. In the strenuous age in which we live speed is deemed of prime im-

portance. But one must still pause long enough to verify the statements contained in a paper prepared for use as an affidavit, by swearing to them, before he can obtain a distress warrant to be issued and have the property of another seized.

The verdict was without evidence to support it, because it was shown that there was no affidavit, and therefore no valid distress warrant. On the general subject see Carlisle v. Gunn, 68 Miss. 243 (8 So. 743); 2 Bishop's Cr. Law (8th ed.) §1018; United States v. Bear, 18 Blatchf. 493 (6 Fed. 42); Dunlap v. Clay, 65 Miss. 454 (4 So. 118); State v. Gay, 59 Minn. 6 (50 Am. St. R. 389, 60 N. W. 676).

*Judgment reversed. All the Justices concur, except Holden, J., who did not preside.*