12584, 12585. BERTHA MINERAL CO. *v.* BUIE; and *vice versa.*

1. Where a person signed a paper in the form of an affidavit for the purpose of foreclosing a mechanic's lien, and then procured a duly authorized officer to attest it by signing the jurat, but in fact no oath was taken or administered, or anything tantamount thereto, the paper did not constitute a legal affidavit, and furnishes no basis for the foreclosure of a mechanic's lien, and a sheriff's sale thereunder is without authority and void.

(*a*) A purchaser at such a sale acquires no title, and this is so whether or not the purchaser had notice of the want of authority on the part of the sheriff to sell the property.

2. There was evidence sufficient to authorize the judge, who was sitting without a jury, to find that the mortgagor had title to and possession of the property in question at the time the mortgage was executed.

3. The other assignments of error are without substantial merit.

DECIDED NOVEMBER 18, 1921.

Levy and claim; from Camden superior court — Judge Highsmith. May 14, 1921.

This is a claim case. The facts disclosed by the record are in substance as follows: The St. Marys Transportation Company, a copartership composed of J. L. Douglas and others, executed a

mortgage on a certain "lighter" to the Bertha Mineral Company. This mortgage was executed by J. L. Douglas on behalf of the St. Marys Transportation Company, and was properly recorded. Subsequently John Richardson, who built the lighter or barge, foreclosed a mechanic's lien thereon against J. L. Douglas, and had the property levied on and sold at public outcry. At this sale J. C. Buie bought the lighter. Thereafter the Bertha Mineral Company foreclosed its mortgage and levied upon the lighter. Buie thereupon interposed a claim. Thus was the issue formed, which, by consent of all parties, was submitted to the court for determination without the intervention of a jury. The court decided the issue in favor of the claimant, holding: " (1) The mortgage, whether a mortgage by Douglas or by the partnership, was a good and valid mortgage against the property as between the parties. A member of a copartnership is authorized to execute a mortgage on personalty belonging to the partnership to secure a partnership debt. (2) The evidence was sufficient to make a prima facie case on behalf of the plaintiff, showing possession of the property by Capt. Richardson to have been through and on behalf of Douglas. (3) The mechanic's lien was a superior lien to the mortgage. (4) The mechanic's lien appearing on its face to be in every way regular, and the claimant having bought at sheriff's sale under foreclosure of the mechanic's lien, without notice of any defect with respect to the affidavit of foreclosure not having been properly verified or otherwise, [he] would stand in the position of an innocent purchaser and would be protected in the title thus acquired. The alleged defect would be immaterial in this case as against the claimant. (5) It follows that the property is not subject to the mortgage fi. fa., and it is so held."

The plaintiff in fi. fa. excepts to the findings of the court against it, while the claimant, in a cross-bill of exceptions, excepts to the holdings adverse to him.

*S. C. Townsend, Conyers & Wilcox,* for Bertha Mineral Company.

*Cowart & Vocelle,* contra.

BROYLES, C. J. (After stating the foregoing facts.) We deem it necessary only to consider one of the points raised by the main bill of exceptions, to wit, that the affidavit which

formed the basis of the mechanic's lien foreclosure, not being sworn to, was void, the sheriff's sale thereunder was without authority, and the claimant, who purchased the property in dispute at such a sale acquired no title thereto.

Section 3354 of the Civil Code of 1910 provides that "all mechanics of every sort, for work done and material furnished in manufacturing or repairing personal property, shall have a special lien on the same," which ".shall be enforced in accordance with the provisions of section 3366 of this Code," when the property is surrendered and credit given. Subsection 3 of § 3366 provides that "the person prosecuting such lien, either for himself or as guardian, administrator, executor, or trustee, must, by himself, agent, or attorney make affidavit showing all the facts necessary to constitute a lien under this Code." As to the making of the affidavit in question the witness Richardson, the person who built the lighter in question, testified: "I do not remember where I was when I signed this paper [the paper relied upon by claimant as the affidavit foreclosing the mechanic's lien of John Richardson under which he bought at sheriff's sale]. I do not remember who was present when I signed it. I do not remember who it was that swore me when I signed the paper. I don't remember whether I was sworn or not, it has been so long. So many things happened, and, me getting old, I don't remember. I don't know where I was when I went to foreclose this lien. I employed Col. Vocelle and I don't remember where I was. I don't remember that Howard Rudulph was present and he had me hold up my hand. I am not trying to dodge, I could not tell you. You could question me all day and I could not tell you only what I have told you." Rudulph, the officer who signed the jurat to the paper in question, testified on direct examination: "That is my signature (indicating the signature to the jurat of the said alleged affidavit undertaking to foreclose the lien of John Richardson). At the time this paper was signed (indicating said alleged affidavit) before me by Captain Richardson, I administered no oath or affirmation at all to him that I know of. I think he just signed his name." On cross-examination this witness testified: "I am not in the habit of attesting papers when a man signs his name to it. I don't know whether Captain Richardson told me he wanted to swear to a paper. He

said he wanted to sign a paper and I could not say what it was. I know I did not administer an oath to him, but I do remember that he told me he wanted to swear to a paper in my presence, but I did not read it over. He said he wanted to sign a, paper and I attested it as clerk of the superior court and issued execution on it. I do not know whether he told me the contents of it were true. I did not ask him any question at all."

While it is true that the introduction of the alleged affidavit in evidence, which appears on its face to be regular, cast the burden upon the party attacking it to show that it was not in fact legally executed (*Britt* v. *Davis,* 130 *Ga.* 76, 60 S. E. 180), still it is our opinion that the evidence quoted above was sufficient to carry this burden. That evidence shows conclusively that no oath was administered, nor anything done which the law deems sufficient as amounting to the administration of an oath. Therefore the paper claimed to be an affidavit can neither suffice as such nor furnish a basis for the foreclosure of a mechanic's lien. In the case of *McCain* v. *Bonner,* 122 *Ga.* 842, 846 (51 S. E. 36), it was said: "If, however, the affiant, at the time of tendering the affidavit to the officer, *uses language signifying that he consciously takes upon himself the obligation of an oath, and the officer so understands* and immediately signs the jurat, this will amount to such concurrence of act and intention as will constitute a legal swearing. The acts of the officer and of the affiant must be concurrent, and must *conclusively* indicate that it was the purpose of the one to administer and the other to take the oath, in order to make a valid affidavit." (Italics ours.) The facts of that case were that the affiant presented to the officer an affidavit previously signed by him, with the statement that he was familiar with its contents, *that what was therein contained was true,* and that he *swore* to the same, and the officer immediately, on the faith of that statement, appended his signature to the jurat; and, it was held that this language of the affiant was sufficient to make it a question for the jury to determine whether or not the affidavit had been sworn to. Viewed in the light of the decision in that case (which seems to be the leading Georgia decision on the subject), how stands the instant case? The affiant's testimony upon this point is altogether negative, and the uncontradicted evidence of the officer who at-

tested the alleged affidavit is that he " did not administer an oath to him." It does not appear that the affiant stated that what was written on the paper was true. The mere statement that he told the officer that " he wanted to swear to a paper " in his presence is insufficient. What one wants to do and what one actually does are two entirely different things. The facts of the instant case do not, therefore, measure up to the test laid down in the *McCain* case, supra, since the evidence shows conclusively that the affiant did not in fact swear to the paper, and the facts failed to present anything from which such an inference could legally be drawn. See *Britt* v. *Davis,* supra; *Bryan* v. *Madison,* 135 *Ga.* 171 (68 S. E. 1106) ; *Green* v. *Rhodes,* 8 *Ga. App.* 301 (68 S. E. 1090). The judge, sitting without a jury, failed to squarely decide this question, since in his findings he said: " The mechanic's lien appearing on its face to be in every way regular, and the claimant having bought at sheriff's sale under foreclosure of the mechanic's lien, without notice of any defect with respect to the affidavit of foreclosure not having been properly verified or otherwise, [he] would stand in the position of an innocent purchaser and would be protected in the title thus acquired. The alleged defect would be immaterial in this case as against the claimant."

We cannot agree with the trial court in this finding. If the officer had no authority to issue the execution (and we have already seen that he had not, in view of the fact that the alleged affidavit was not sworn to), the sale of the property under such circumstances would be void, and the purchaser thereat would acquire no title; and this is true notwithstanding the purchaser was such bona fide and without notice of the want of authority to sell. See *Bell* v. *Chandler,* 23 *Ga.* 356 (2), where it was held: " A purchaser at sheriff's sale acquires no title, if the sheriff had no authority to sell, and this is so, whether the purchaser had notice of the want of authority or not." And in *Tolbert* v. *Collier,* 141 *Ga.* 700 (2) (81 S. E. 1103), it was held that " Inasmuch as there was no authority on the part of the clerk to issue the execution mentioned in the preceding headnote, and it did not confer upon the sheriff any authority to levy upon and sell the land involved in the former litigation, the purchaser at such sale acquired no title thereunder. " See also, in this connection, 23 C.

J. 757, and numerous cases there collected. From what has been said it follows that the court erred in finding and adjudging that the property was not subject to the mortgage fi. fa.

The case being reversed on the main bill of exceptions, it becomes necessary to pass upon the cross-bill of exceptions. The first point presented thereby is that the court erred in not dismissing the levy for the reason that the plaintiff in fi. fa. failed to make out a prima facie case, since it failed to show either title to or possession in the mortgagor at the time of the execution of the mortgage. We cannot say that the trial court (who it will be remembered was exercising the functions of both judge and jury) erred in holding that the evidence was sufficient to show title and possession to the property in question in the mortgagor. The evidence of the witness Richardson, while not altogether clear and free from conflict, was in part as follows: "I could not say for whom I was in possession except for Mr. Douglas. . . Mr. John L. Douglas got me to build the lighter, and I was building it under his direction. . . I was building the lighter for stockholders . . Douglas was at the head; there was no contract for me to build the lighter, but Douglas paid me to build it, and if he paid me he employed me. All I was paid he paid it." It will be recalled in this connection that Douglas executed the mortgage in question on behalf of the St. Marys Transportation Company, a copartnership composed of Douglas and others, to the Bertha Mineral Company, the plaintiff in fi. fa. The evidence of the witness was, we think, sufficient to show a bailment by Richardson for Douglas: Possession in the mortgagor was all that the plaintiff in fi. fa. was required to show, and the possession of the bailee, Richardson, was the possession of the bailor, St. Marys Transportation Company, subject of course to the bailee's claim of lien upon the property.

Furthermore, the record shows beyond question that the only right of the claimant to the property in dispute was through J. L. Douglas, and therefore, if Douglas had no title to the property, then obviously the claimant acquired none by purchasing it at public sale.

The other points raised in the cross-bill of exceptions are without substantial merit.

*Judgment reversed on the main bill of exceptions; affirmed on cross-bill. Luke and Bloodworth, JJ., concur.*