A97A0804. PHOEBE PUTNEY MEMORIAL HOSPITAL
v. SKIPPER.
(487 SE2d 1)

SMITH, Judge.

We granted the application for interlocutory appeal filed by Phoebe Putney Memorial Hospital ("the hospital") to consider whether Inez Skipper filed a valid professional malpractice affidavit within the applicable statute of limitation. We conclude that Skipper's original affidavit was invalid and that her amended affidavit did not satisfy the requirements of OCGA § 9-11-9.1. We therefore reverse the trial court's denial of the hospital's motion to dismiss.

The facts relative to the issue are not in dispute. Skipper filed a medical malpractice action against the hospital on May 10, 1995. She alleged that the statute of limitation would expire within ten days of the filing, that because of time constraints, an expert affidavit could not be prepared prior to filing, and that an affidavit would be filed within 45 days. See OCGA § 9-11-9.1 (b). On June 12, 1995, a document purporting to be an affidavit sworn to by William I. Capps, M.D. was filed. The hospital answered, raising as a defense the failure to comply with OCGA § 9-11-9.1. Although the affidavit is notarized, it is not disputed that Capps did not sign it in the presence of a notary public. After learning from Dr. Capps during his deposition that he did not sign the affidavit in a notary's presence, the hospital filed a motion to dismiss for failure to file a valid affidavit. In response, Skipper did not seek an extension of time for filing a supplemental affidavit, nor did the court grant one sua sponte. Instead, she filed an amended affidavit on July 24, 1996; it purportedly was signed by Dr. Capps in the presence of a notary public. The trial court denied the motion to dismiss without explanation.

The original affidavit was invalid. "In the absence of a valid jurat, a writing in the form of an affidavit has no force, no validity, amounts to nothing, when standing alone, or when construed in connection with other evidence. . . . In order to make an affidavit there must be present the officer, the affiant, and the paper, and there must be something done which amounts to the administration of an oath." (Citations and punctuation omitted.) *Harvey v. Kidney Center of Central Ga.*, 213 Ga. App. 319, 320 (444 SE2d 590) (1994).

Although the hospital raised as a defense the failure to comply with the affidavit requirement, Skipper argues that the "paramount question" is whether the hospital waived the particular defect in the

original "affidavit" by not raising it in its initial pleading. This argument blatantly ignores the fact that her counsel submitted a facially proper document to the court and to the hospital, knowing that it would not be deemed properly executed were the truth known. It was held out to be a sworn statement of the doctor, given under oath and subscribed in the presence of a notary and thus meeting the requirements of an affidavit. See, e.g., *Harvey*, supra at 320. Such documentary evidence is a crucial prerequisite to a professional malpractice suit, legislatively mandated to preclude frivolous lawsuits.

The hospital, and the trial court, would assume when looking at the affidavit that it was proper. Unless they were to assume impropriety instead, it would only be happenstance for the hospital to have the opportunity to discover the circumstances of the affidavit preparation before it deposed the affiant. Even then, Dr. Capps affirmatively answered the question whether he signed in the presence of a notary public. Had the hospital's counsel not persisted and pursued discovery of the signing process beyond this point, the invalidity of the original affidavit would not have been revealed. It is undisputed that plaintiff's counsel took the proposed affidavit to the doctor, had him sign it without a notary being present, and then returned it to his own office where it was signed and stamped by the notary despite its departure from the truth. When the answer was filed, Dr. Capps had not yet revealed that a notary was not present when he signed the affidavit. The hospital filed its motion to dismiss only eight days after Dr. Capps's deposition, in which he acknowledged that the notary was not present. Skipper's argument has no merit.

Because the purported affidavit was invalid when filed, the document was tantamount to no affidavit having been filed. Even when the first document is ignored, the second affidavit was not filed within the 45-day grace period but rather over one year beyond the expiration of that period. It could not constitute the supplement to the pleading allowed by OCGA § 9-11-9.1 (b), which permits the trial court to extend the 45-day grace period "as it shall determine justice requires." Justice, however, requires truth, not subterfuge. And the truth is that Skipper's counsel failed to seek an extension of the 45-day grace period and also submitted a facially valid affidavit despite the fact that it was invalid. Under these circumstances, Skipper was not entitled to amend her complaint after the expiration of the grace period under OCGA § 9-11-9.1 (e). The trial court erred in denying the hospital's motion to dismiss.

*Judgment reversed. Beasley, J., concurs. McMurray, P. J., concurs in the judgment only.*

DECIDED APRIL 16, 1997 —
RECONSIDERATION DENIED MAY 29, 1997 — 

 Before Judge Phipps.

Langley & Lee, C. Richard Langley, Carl G. Fulp III, for appellant.

Farkas & Ledford, Leonard Farkas, Thomas G. Ledford, Diane L. Perry, David E. Perry, for appellee.