A98A0765. HARRIS v. MURRAY.
(504 SE2d 736)

POPE, Presiding Judge.

Laura S. Harris brought a medical malpractice action against Samuel D. Murray, Jr., M.D.,[1] and filed with her complaint an expert affidavit as required by OCGA § 9-11-9.1. The affidavit showed on its face that the expert executed it under oath before a notary public. In a subsequent deposition, the expert testified that the notary public whose jurat appeared on the affidavit did not administer an oath to him before he signed it. The trial court granted summary judgment in favor of Murray on the basis that Harris failed to comply with the affidavit requirement of OCGA § 9-11-9.1 because without an oath the document was not an affidavit. Harris claims the trial court erred in granting summary judgment to Murray because (1) Murray waived lack of compliance with OCGA § 9-11-9.1 as a defense by failing to raise the defense in his initial responsive pleading; and (2) the affidavit was in fact executed under oath.

1. Prior to discussing the application of OCGA § 9-11-9.1 to the facts of this case, we must first determine which version of the statute applies. The present action was filed on December 14, 1995. In 1997, the legislature amended § 9-11-9.1 with an effective date of July 1, 1997. Ga. L. 1997, pp. 916, 919, § 2. Section 2 of the 1997 amendments provided that the 1997 act "shall apply only to actions

---

[1] The complaint also names other defendants who are not parties to this appeal.

filed on or after [the effective] date." Id. Accordingly, the legislature expressed its intention that the 1997 amendments apply prospectively.

In *Vester v. Mug A Bug Pest Control*, 231 Ga. App. 644 (500 SE2d 406) (1998), this Court recognized that § 9-11-9.1 is a statute governing procedural rather than substantive matters; that the effective date of the 1997 amendments to § 9-11-9.1 was July 1, 1997, and that the legislature provided in Section 2 of the amendments that the 1997 act " 'shall apply only to actions filed on or after (the effective) date.' " Id. at 649. Despite the above-quoted language indicating prospective application of the 1997 amendments, *Vester* concluded that: "Such language is applicable only to laws that create substantive rights that cannot be given retroactive effect, because the parties are vested with substantive rights. See OCGA § 1-3-5; *Polito v. Holland*, 258 Ga. 54 (365 SE2d 273) (1988); *Pritchard v. Savannah Street &c. R. Co.*, 87 Ga. 294 (13 SE 493) (1891). This Court has held that OCGA § 9-11-9.1 is procedural in nature, conveying no vested rights, and can be applied retroactively. *Kneip v. Southern Engineering*, 260 Ga. 409, 410-411 (4) (395 SE2d 809) (1990); *Blackmon v. Thompson*, 195 Ga. App. 589 (394 SE2d 795) (1990); *Precision Planning v. Wall*, 193 Ga. App. 331 (387 SE2d 610) (1989). As a procedural law, notwithstanding the legislative attempt to make the application prospective only, the reenactment has retroactive application." Id.

The above-quoted holding in *Vester* is contrary to long established law, subverts the clear legislative intent for prospective application of the 1997 amendments, and we therefore overrule it. The correct rule is that "where a statute governs only procedure of the courts, including the rules of evidence, it is to be given retroactive effect *absent an expressed contrary intention. Pritchard v. The Savannah Street &c. Co.*, 87 Ga. 294 (13 SE 493) (1891); *Slaughter v. Culpepper*, 35 Ga. 25 (1866)." (Emphasis supplied.) *Polito v. Holland*, 258 Ga. at 55. The legislature expressed its intention that the 1997 amendments to § 9-11-9.1 be given prospective application by plainly stating that the 1997 act "shall apply only to actions filed on or after [the effective] date." Ga. L. 1997, pp. 916, 919, § 2. *Vester* incorrectly cited *Pritchard*, 87 Ga. 294 and *Polito*, 258 Ga. 54 for the proposition that only statutes creating substantive rights can be given prospective application. In fact, these cases recognize the power of the legislature to give prospective application to procedural statutes by expressing a legislative intention to do so. *Vester* also misleadingly cites *Kneip*, 260 Ga. 409; *Blackmon*, 195 Ga. App. 589, and *Precision Planning*, 193 Ga. App. 331, in support of its conclusion that the 1997 amendments apply retroactively. Although these cases correctly concluded that § 9-11-9.1 is procedural and that the statute applied retroactively, all three cases dealt with the 1987 version of the stat-

ute and its 1989 amendment. Contrary to the 1997 amendments to § 9-11-9.1, neither the 1987 version of the statute nor the 1989 amendment contained any expression by the legislature that they were to be given prospective application. Ga. L. 1987, pp. 887, 889-890, § 3; Ga. L. 1989, pp. 419, 421-422, § 3. Accordingly, the 1997 amendments to OCGA § 9-11-9.1 do not apply retroactively to this case; rather, the former version of the statute controls.

2. We find no merit in Harris' contention that Murray waived his defense under OCGA § 9-11-9.1.

Murray's defense under § 9-11-9.1 was that the expert affidavit, which appeared valid on its face when it was filed with the complaint, was subsequently shown not to be an affidavit because it was not given under oath. Murray raised this defense after the expert testified on deposition that no formal oath was administered to him when he executed the affidavit.

Prior to the 1997 amendments to § 9-11-9.1, former subsection (e) of the statute provided in pertinent part that: "Except as allowed under subsection (b) of this Code section, if a plaintiff fails to file an affidavit as required by this Code section contemporaneously with a complaint alleging professional malpractice and the defendant raises the failure to file such an affidavit in its initial responsive pleading, such complaint is subject to dismissal for failure to state a claim and cannot be cured by amendment pursuant to Code Section 9-11-15. . . ." In *Seely v. Loyd H. Johnson Constr. Co.*, 220 Ga. App. 719, 724 (470 SE2d 283) (1996), we construed former subsection (e) in a case where the malpractice plaintiff failed to file any document purporting to be the required expert affidavit with the complaint, and the malpractice defendant did not raise this failure as a defense in its initial responsive pleading. On these facts, we concluded that under the plain language of the statute, the defendant's failure to raise the lack of an affidavit in its initial responsive pleading was a waiver of the defense. Id. at 724.

The waiver holding in *Seely* is inapplicable to the present facts. Because Harris filed a document with the complaint which appeared on its face to be a valid expert affidavit in compliance with OCGA § 9-11-9.1, Murray initially had no reason to challenge the affidavit and, therefore, he had no duty under the statute to raise any § 9-11-9.1 defense in his initial responsive pleading to the complaint. When Murray subsequently deposed the expert, the expert testified that no formal oath was administered to him before he executed the affidavit. Upon making this discovery, Murray's first response was to file motions seeking dismissal or summary judgment on the complaint in which he raised the defense that Harris failed to file the required affidavit. Under these facts, there was no waiver of the § 9-11-9.1 defense. Because Murray acted diligently in raising the defense in

the first pleading he filed after discovering evidence causing him to challenge the validity of the affidavit, he satisfied the statutory requirement that the defendant raise the failure to file the required affidavit "in its initial responsive pleading." OCGA § 9-11-9.1 (e), (f); *Phoebe Putney Mem. Hosp. v. Skipper*, 226 Ga. App. 585, 586 (487 SE2d 1) (1997) (physical precedent), cert. granted by the Supreme Court and remanded to the Court of Appeals in unpublished order (1998).

This conclusion comports with our duty to construe the statute in a manner that gives effect to the intention of the legislature. *City of Roswell v. City of Atlanta*, 261 Ga. 657 (410 SE2d 28) (1991). Although the statute does not plainly address its application to the present facts, the legislature clearly intended to allow the defendant in a malpractice case to raise the failure to file the required expert affidavit at the defendant's first opportunity. Murray's first opportunity to file a responsive pleading raising the defense was not in his initial responsive pleading after the complaint, but in his initial responsive pleading after the deposition in which it was revealed that no formal oath was administered. To construe the statute under these facts to mean that defendants waive the defense unless they preserve it by raising it in their initial responsive pleading to the complaint would require defendants to universally raise possible defenses in response to the complaint without any factual basis at the time for doing so. The legislature could not have intended this result because it would place defendants attempting to preserve the defense in violation of the requirements of honesty and good faith in pleading and would subject them to possible abusive litigation claims. *North Ga. Production Credit Assn. v. Vandergrift*, 239 Ga. 755, 763 (238 SE2d 869) (1977); OCGA § 51-7-80 et seq.

3. Harris asserts that, contrary to the trial court's finding, the expert affidavit was given under oath. We agree with this assertion.

"In order to make an affidavit, there must be present the officer, the affiant, and the paper, and there must be something done which amounts to the administration of an oath." *Carnes v. Carnes*, 138 Ga. 1, 6 (74 SE 785) (1912). It is not necessary that the oath administered be formal, nor is it necessary that any exact words or specific ceremony be used to constitute a valid administration of an oath. *McCain v. Bonner*, 122 Ga. 842, 846 (51 SE 36) (1905); *Britt v. Davis*, 130 Ga. 74, 77 (60 SE 180) (1908). "What the law requires is that there must be, in the presence of the officer, something done whereby the person to be bound consciously takes upon himself the obligation of an oath. It is not essential that affiant should hold up his hand and swear in order to make his act an oath, but it is sufficient if both affiant and the officer understand that what is done is all that is necessary to complete the act of swearing." (Citations and punctuation omitted.)

*McCain*, 122 Ga. at 846.

In the instant case, although the affiant did not hold up his hand and swear before signing the affidavit, it is uncontroverted that both he and the notary public understood that his actions and signing of the affidavit in the notary public's presence were all that was necessary to complete the act of swearing. The record shows that in response to Murray's summary judgment motion, Harris produced additional affidavits from Jeffrey S. Penner, M.D., the expert affiant on the § 9-11-9.1 affidavit, and from Laurette Ross, the notary public before whom Penner appeared to execute the § 9-11-9.1 affidavit.

Ross stated in her affidavit that "[o]n December 11, 1995, Jeffrey S. Penner, M.D., appeared before me in order to execute an [expert] Affidavit to be given in [this case]. By his actions, I understood that he considered himself to be under oath when he executed the Affidavit." Similarly, Penner stated in his second affidavit that "[o]n December 11, 1995, I executed the document labeled Affidavit of Jeffrey S. Penner, M.D (hereinafter referred to as 'First Affidavit'). At the time of executing the First Affidavit, I was standing before Laurette Ross, the notary public. As recited in the First Affidavit, I knew the document I was signing was intended to be an affidavit. I did consciously, in the presence of the notary, take upon myself the obligations of the oath. I intended all of the statements made in the First Affidavit to be truthful and understood myself to be under oath."

Contrary to Chief Judge Andrews' dissent, the evidence shows more than that Penner merely signed a document. The affidavit Penner signed clearly stated it was being made under oath, and Penner has said that he read and understood that it was being made under oath before he signed it. Furthermore, the signing was done in front of the notary public and she has sworn that by Penner's actions she understood that he considered himself to be under oath when executing the affidavit. Because Penner signed the affidavit in front of Ross and because they both understood that what he had done was sufficient to complete the act of swearing, we must conclude that the affidavit was given under oath and is valid.

The dissent contends that this conclusion virtually eliminates the requirements for a valid oath set forth in *McCain*, supra, *Britt*, supra, and *Carnes*, supra. This contention is without merit. All three of those cases involved affidavits signed by affiants outside the presence of officers who later signed the affidavits. In both *Carnes* and *Britt* the Supreme Court found that affidavits signed by affiants outside the presence of the officers were invalid. In *McCain*, supra at 846, the Court determined that there was evidence the previously signed affidavit was valid when the affiant presented it to the officer, the affiant swore the affidavit was true, and then the officer signed

the jurat. Our holding in the instant case, that the affidavit was valid because Penner signed it in front of Ross and they both understood that he was under oath, falls squarely under the authority of *Carnes, Britt* and *McCain.*

Moreover, this holding comports with the expressed intention of the legislature and our Supreme Court that the affidavit requirement be liberally construed in favor of the plaintiff and that amendment of the affidavit should be allowed to make it comport with OCGA § 9-11-9.1. "Because OCGA § 9-11-9.1 constitutes an exception to the general liberality of pleading allowed under the Civil Practice Act, it is to be construed in a manner consistent with the liberality of the Act so long as such a construction does not detract from the purpose of § 9-11-9.1, which is to reduce the filing of frivolous malpractice suits." *Porquez v. Washington,* 268 Ga. 649, 652 (492 SE2d 665) (1997). "[A] § 9-11-9.1 affidavit should be construed most favorably to the plaintiff with all doubts resolved in plaintiff's favor, even if an unfavorable construction of the affidavit may be possible." Id. at 650. See also *Gadd v. Wilson &c.,* 262 Ga. 234, 235 (416 SE2d 285) (1992). Moreover, when the sufficiency of the expert affidavit initially filed with the complaint is challenged, a plaintiff is allowed to present supplementary evidence in support of its sufficiency. *Hewett v. Kalish,* 264 Ga. 183, 184-185 (442 SE2d 233) (1994); *Porquez,* 268 Ga. at 651-652. This is true whether the challenge is to the expert's competency or to the sufficiency of the expert's statements regarding negligent acts. Id. As the Supreme Court stated in *Porquez,* "[p]ermitting the plaintiff to amend the expert affidavit in order to meet the requirement that it set forth at least one claimed negligent act or omission by each defendant and its factual basis does not defeat the purpose of the statute, but instead helps to insure that the complaint is not frivolous." Id. at 652. The court in *Porquez* also concluded that the Legislature intended for plaintiffs to have a broad right to amend defective affidavits under former § 9-11-9.1. Id. at 652. In support of this conclusion, *Porquez* pointed out that the 1997 amendment to § 9-11-9.1 provides in subsection (d) that if the defendant alleges by motion filed with the initial responsive pleading that the expert affidavit filed with the complaint is defective, the plaintiff may cure the alleged defect by amendment pursuant to OCGA § 9-11-15 within 30 days of service of the motion. Id.[2]

In this case Harris clearly fulfilled the intent behind OCGA § 9-11-9.1 to thwart the filing of frivolous lawsuits by filing an expert affidavit, given under oath, that clearly states an act of professional

---

[2] Of course, this newly created 30-day right to cure alleged defects does not apply in the present case since, as previously stated, the 1997 amendments have no application here.

negligence by the defendant Murray. The trial court's grant of summary judgment to Murray was erroneous and must be reversed.

*Judgment reversed. Johnson, P. J., Beasley, Blackburn, Smith, Ruffin, JJ., and Senior Appellate Judge Harold R. Banke concur. McMurray, P. J., and Eldridge, J., concur specially. Andrews, C. J., dissents.*

ELDRIDGE, Judge, concurring specially.

1. Reluctantly, I agree with the majority as to the need to overrule in part *Vester v. Mug A Bug Pest Control*, 231 Ga. App. 644 (500 SE2d 406) (1998), because the General Assembly in passing Ga. L. 1997, pp. 916, 919, § 2 (OCGA § 9-11-9.1), included the language when setting the effective date: "shall apply only to actions filed on or after [the effective] date," which prohibits the retroactive application of the Act. While the statement as to limitation of retroactivity by the General Assembly of procedural matter was dicta, the Supreme Court in *Polito v. Holland*, 258 Ga. 54, 55 (365 SE2d 273) (1988) quoting dicta in *Pritchard v. Savannah Street &c. R. Co.*, 87 Ga. 294, 297-299 (13 SE 493) (1891) did state: "[g]enerally statutes prescribe for the future and that is the construction to be given unless there is a clear contrary intention shown. On the other hand, where a statute governs only procedure of the courts, including the rules of evidence, it is to be . . . retroactive [in] effect absent an express contrary intention. . . . Substantive law is that law which creates rights, duties, and obligations. Procedural law is that which prescribes the methods of enforcement of rights, duties, and obligations." Accord *Barner v. State*, 263 Ga. 365, 367 (4) (434 SE2d 484) (1993); *Cannon v. State*, 246 Ga. 754, 755 (1) (272 SE2d 709) (1980); *Thurman v. Mabry*, 221 Ga. 153, 154 (143 SE2d 645) (1965); *Logan v. State*, 212 Ga. App. 734, 736-737 (b) (442 SE2d 883) (1994); *Clary v. State*, 151 Ga. App. 301, 302 (2) (259 SE2d 697) (1979); *Rider v. Taylor*, 166 Ga. App. 474, 475 (2) (143 SE2d 645) (1965). This was the first time that the General Assembly, in the many times amending the Civil Practice Act, has expressly restricted retroactive application of this procedural act. Thus, absent a clear and unambiguous expression of intent by the General Assembly, as in this amendment, to prohibit the retroactive application of a procedural act or amendment, such procedural act will apply retroactively.

2. While I agree with Division 2 of the majority in its entirety as it applies to OCGA § 9-11-9.1 prior to the effective date of Ga. L. 1997, pp. 916, 919, § 2, I would point out that the General Assembly intended in the 1997 amendment to prevent such issues, as in this case, being raised later by either motion to dismiss, OCGA § 9-11-12 (b) (6), or by summary judgment, OCGA § 9-11-56, because the defendant shall raise such defense "by motion to dismiss filed con-

temporaneously with its initial responsive pleading that the plaintiff has failed to file the requisite affidavit." See OCGA § 9-11-9.1 (b) (as amended). The legislative intent was to prevent the very technical attack made in this case; either the motion to dismiss is made contemporaneously with the responsive pleading or no motion to dismiss can be later filed, because the purpose of OCGA § 9-11-9.1 was to reduce the number of frivolous malpractice suits being filed by requiring an affidavit which makes out a prima facie case of liability as a condition precedent and which would have been done, notwithstanding that the affidavit is defective but amendable. *O-1 Doctors Mem. Holding Co. v. Moore*, 190 Ga. App. 286, 288 (1) (378 SE2d 708) (1989); accord *Hewett v. Kalish*, 264 Ga. 183, 184 (1) (442 SE2d 233) (1994); *Gadd v. Wilson &c.*, 262 Ga. 234, 235 (416 SE2d 285) (1992); *Housing Auth. of Savannah v. Greene*, 259 Ga. 435, 439 (5) (383 SE2d 867) (1989). OCGA § 9-11-9.1 merely imposes a pleading requirement. See *Hewett v. Kalish*, supra at 184. Thus, after July 1, 1997, such attack on the affidavit must be raised, not at the earliest possible opportunity, but contemporaneous with the responsive pleadings. See OCGA § 9-11-9.1 (b). Thus, if the expert witness' deposition is taken and a material issue of fact is raised as to liability through the expert witness' testimony, then any defect in the affidavit has been cured by the sworn testimony of such expert as to the facts and issues contained in the affidavit and the only method of attack remaining is on the merits of the case by summary judgment. See *Porquez v. Washington*, 268 Ga. 649, 651-652 (1) (492 SE2d 665) (1997); *Hewett v. Kalish*, supra at 184-185. A defect in pleading cannot be raised by summary judgment. See *Porquez v. Washington*, supra at 651-652; *Hewett v. Kalish*, supra at 184-185. If such procedure is not followed, then OCGA § 9-11-9.1 will be used as a procedural barrier to trial on the merits on technical grounds as to the affidavit alone. There would exist, not a frivolous malpractice suit, but a suit that could withstand summary judgment on the merits; however, discovery may disclose a latent defect in the affidavit, i.e., that no oath was properly administered in the notary's presence, that the notary's commission expired, that the lawyer-expert failed to pay his current bar dues before time of the affidavit, or that some similar amendable defect existed to the affidavit.

3. I concur fully with Division 3 of the majority and the judgment.

I am authorized to state that Presiding Judge McMurray joins in this special concurrence.

ANDREWS, Chief Judge, dissenting.

I fully concur with all that is said in Division 1 of the majority opinion. The majority correctly concludes that *Vester v. Mug A Bug*

*Pest Control*, 231 Ga. App. 644 (500 SE2d 406) (1998) wrongly held that the 1997 amendments to OCGA § 9-11-9.1 have retroactive application. Accordingly, I agree with the majority that the 1997 amendments to § 9-11-9.1 do not apply retroactively; that *Vester's* erroneous holding should be overruled, and that the pre-1997 version of § 9-11-9.1 applies to this case.

I also fully concur with all that is said in Division 2 of the majority opinion. I agree that Murray preserved his § 9-11-9.1 defense by diligently raising it in the first pleading he filed after the expert affiant testified in his deposition that no oath was administered to him by the notary before he executed the purported affidavit. I add that this is the only reasonable interpretation that can be given to § 9-11-9.1 under these circumstances. To otherwise conclude that the defense of lack of compliance with the expert affidavit requirement is waived if not filed with the initial responsive pleading to the complaint would construe the statute as allowing a plaintiff to file a document which purports on its face to be an affidavit, but in fact is not, escape any subsequent challenge to its validity, and proceed with a malpractice action without a valid expert affidavit. This would frustrate the recognized intent of the statute to reduce the filing of frivolous malpractice actions by requiring a valid expert affidavit to be filed with the complaint. *0-1 Doctors Mem. Holding Co. v. Moore*, 190 Ga. App. 286, 288 (378 SE2d 708) (1989).

I respectfully dissent because I disagree with the majority's conclusions in Division 3 that the purported affidavit was given under oath, and that the trial court erred by granting summary judgment to Murray. The trial court correctly concluded that the purported affidavit was not given under oath. Therefore, the trial court correctly granted summary judgment to Murray on the basis that the document was not an affidavit, and that Harris failed to file an expert affidavit with the complaint as required by § 9-11-9.1. The pre-1997 version of § 9-11-9.1, which applies in this case, plainly requires that Harris' malpractice complaint be dismissed under these circumstances.

The majority finds that, even though the purported affidavit at issue was not executed with a formal oath, there was an informal oath sufficient to sustain the document as an affidavit. The evidence, however, does not support this holding.

On deposition, the expert affiant testified that the notary public whose jurat appeared on the purported affidavit did not administer an oath to him before he signed it. After making this discovery, Murray moved for dismissal of the complaint and for summary judgment on the basis that, without an oath, there was no affidavit and, therefore, Harris had failed to file an expert affidavit as required by OCGA § 9-11-9.1. In response to the summary judgment motion,

Harris produced additional affidavits from Jeffrey S. Penner, M.D., the expert affiant on the purported § 9-11-9.1 affidavit, and from Laurette Ross, the notary public before whom Penner appeared to execute the § 9-11-9.1 affidavit.

Ross stated by affidavit that: "On December 11, 1995, Jeffrey S. Penner, M.D., appeared before me in order to execute an [expert] Affidavit to be given in [this case]. By his actions, I understood that he considered himself to be under oath when he executed the Affidavit." Penner stated by affidavit that: "On December 11, 1995, I executed the document labeled Affidavit of Jeffrey S. Penner, M.D. (hereinafter referred to as 'First Affidavit'). At the time of executing the First Affidavit, I was standing before Laurette Ross, the notary public. As recited in the First Affidavit, I knew the document I was signing was intended to be an affidavit. I did consciously, in the presence of the notary, take upon myself the obligations of the oath. I intended all of the statements made in the First Affidavit to be truthful and understood myself to be under oath."

Under long established law, these facts are insufficient to show that anything was done which could be construed as an oath administered by the officer and taken by the affiant. "In order to make an affidavit, there must be present the officer, the affiant, and the paper, and there must be something done which amounts to the administration of an oath." *Carnes v. Carnes*, 138 Ga. 1, 6 (74 SE 785) (1912). It is not necessary that the oath administered be formal, nor is it necessary that any exact words or specific ceremony be used to constitute a valid administration of an oath. *McCain v. Bonner*, 122 Ga. 842, 846 (51 SE 36) (1905); *Britt v. Davis*, 130 Ga. 74, 77 (60 SE 180) (1908). "What the law requires is that there must be, in the presence of the officer, something done whereby the person to be bound consciously takes upon himself the obligation of an oath. It is not essential that affiant should hold up his hand and swear in order to make his act an oath, but it is sufficient if both affiant and the officer understand that what is done is all that is necessary to complete the act of swearing." (Citation and punctuation omitted.) *McCain*, 122 Ga. at 846.

It is clear that, in order to show an oath was taken and administered, there must be more shown than simply statements after the fact by the affiant and the notary that an oath was intended — there must be evidence that, while the officer, the affiant, and the paper were present, something was done which amounts to the administration of an oath. *Carnes*, 138 Ga. at 6; *McCain*, 122 Ga. at 846. "[T]he mere opinion of the [affiant] that the [officer] understood he was swearing, because he went there for the purpose, can not avail, where his testimony as to what actually occurred shows that he did not in fact swear to the paper, and that there was nothing from which

such an inference could legally be drawn." *Britt*, 130 Ga. at 78. For example, "[t]he mere handing to an officer authorized to administer oaths of an affidavit previously signed by one who is recited therein as having been duly sworn, and in whose presence the officer signed the jurat without administering a formal oath, has been held not to amount to the administration of an oath. In a transaction of this character there is no unequivocal and present declaration or act on the part of the affiant by which he consciously takes upon himself the obligation of an oath. If, however, the affiant, at the time of tendering the affidavit to the officer, uses language signifying that he consciously takes upon himself the obligation of an oath, and the officer so understands and immediately signs the jurat, this will amount to such concurrence of act and intention as will constitute a legal swearing. The acts of the officer and of the affiant must be concurrent and must conclusively indicate that it was the purpose of the one to administer and the other to take the oath, in order to make a valid affidavit. When an affiant presents to the officer an affidavit previously signed by him, with the statement that he is familiar with its contents, that what is therein contained is true, and that he swears to the same, and the officer immediately, on the faith of such declaration, affixes his official signature to the jurat, this conduct would not only indicate that the affiant understood he was taking an oath, but also that the officer likewise so understood, and, by presently signing the jurat, evidenced his intention to administer an oath." *McCain*, 122 Ga. at 846.

The facts in the present case show only that the affiant signed the purported affidavit in the presence of the notary; that the purported affidavit contained language that it was executed under oath, and that the purported affidavit was then presented to the notary who immediately signed the jurat without administering an oath. The only additional evidence presented by the affiant, Penner, was that, when he executed the document, he knew the document was intended to be an affidavit; that he understood himself to be under oath, and that he consciously took upon himself the obligations of an oath. Penner presented no evidence that he said anything in the presence of the notary or did anything in the presence of the notary, other than the fact he signed the purported affidavit. The notary stated only that Penner executed the purported affidavit in her presence and that she understood he considered himself to be under oath by his actions when he executed the purported affidavit. The only evidence of any action taken by Penner is that he executed the purported affidavit in the presence of the notary. There is no evidence of anything said or done by the notary, other than the fact that she signed the jurat.

In support of its conclusion that an oath was administered and

taken, the majority contends that more occurred than the mere signing of the purported affidavit by Penner. The majority points out that the purported affidavit had language in it that stated it was executed under oath and that Penner said in his subsequent affidavit that, at the time he signed the purported affidavit, he understood himself to be under oath. The majority also points out that the signing took place in front of the notary, who said in her subsequent affidavit that, by Penner's actions, she understood that he considered himself to be under oath when he executed the purported affidavit. However, the majority points to no evidence of action taken by Penner other than signing the purported affidavit. The above facts are cited by the majority to support its conclusion that: "Because Penner signed the affidavit in front of Ross and because they both understood that what he had done was sufficient to complete the act of swearing, we must conclude that the affidavit was given under oath and is valid." (Maj. op. at p. 665.)

These facts show a total absence of evidence of any words spoken or any actions taken which amount to the administration and taking of an oath. In the absence of such evidence, the notary and the affiant have simply stated in subsequent affidavits, after the fact, that they understood an oath was intended. But they have provided no evidence that something was done which amounted to the actual administration and taking of an oath. This fails to satisfy the requirement that there be "such concurrence of act and intention as will constitute a legal swearing." *McCain*, 122 Ga. at 846. Given that the only evidence of word or action was that the affiant signed the purported affidavit in the presence of the notary, and the notary immediately signed the jurat, the majority holding reduces a legal swearing to the simple act of signing the purported affidavit. This dismisses the oath requirement as no more than a technical formality and virtually eliminates the requirements for a valid oath set forth in *McCain*, 122 Ga. 842; *Britt*, 130 Ga. 74 and *Carnes*, 138 Ga. 1. Moreover, the majority's additional contention that the liberal interpretation required to be given to § 9-11-9.1 affidavits supports its conclusion that there was a valid oath is misplaced. The favorable construction given to § 9-11-9.1 affidavits after they have been filed with a malpractice complaint has absolutely nothing to do with determining whether a document purporting to be an affidavit was in fact given under oath. If a document purporting to be an affidavit was not given under oath, it is not an affidavit, and no interpretation of § 9-11-9.1 can change that fact.

As this Court has previously stated, " '[w]e can not but deprecate the tendency to treat the taking of an oath as a mere technical formality, worthy of little attention. In the strenuous age in which we live speed is deemed of prime importance. But one must still pause

long enough to verify the statements contained in a paper prepared for use as an affidavit, by swearing to them . . .' [quoting *Britt*, 130 Ga. at 78]. Whether the affiant testifies in view of his responsibility to God or only to the . . . law, in either event what he does is something more than merely to sign a paper." (Punctuation omitted.) *Gruber v. Fulton County*, 111 Ga. App. 71, 78 (140 SE2d 552) (1965).

That a legal swearing amounting to an oath must consist of more than merely signing a purported affidavit in the presence of a notary is illustrated by the case of *Bertha Mineral Co. v. Buie*, 27 Ga. App. 660 (109 SE 539) (1921). In *Bertha Mineral*, the officer who signed the jurat described the purported affidavit as follows: "That is my signature (indicating the signature to the jurat. . . .) At the time this paper was signed (indicating said alleged affidavit) before me by [the affiant], I administered no oath or affirmation at all to him that I know of. I think he just signed his name." Id. at 662. The evidence showed that the affiant told the officer that he wanted to swear to the paper in the presence of the officer. Id. at 663. But the affiant made no statement that the contents of the paper were true, and the officer did not question him about the contents of the paper. Id. at 663-664. Relying on *McCain*, 122 Ga. 842 and *Britt*, 130 Ga. 74, this Court concluded that: "While it is true that the introduction of the alleged affidavit in evidence, which appears on its face to be regular, cast the burden upon the party attacking it to show that it was not in fact legally executed, still it is our opinion that the evidence quoted above was sufficient to carry this burden. That evidence shows conclusively that no oath was administered, nor anything done which the law deems sufficient as amounting to the administration of an oath. Therefore the paper claimed to be an affidavit can neither suffice as such. . . ." *Bertha Mineral*, 27 Ga. App. at 663. We further concluded that, "[t]he mere statement that [the affiant] told the officer that 'he wanted to swear to a paper' in his presence is insufficient. What one wants to do and what one actually does are two entirely different things. The facts of the instant case do not, therefore, measure up to the test laid down in the *McCain* case, supra, since the evidence shows conclusively that the affiant did not in fact swear to the paper, and the facts failed to present anything from which such an inference could legally be drawn." *Bertha Mineral*, 27 Ga. App. at 664.

Applying the facts of this case to the above controlling authorities, there is no evidence in the present record of anything said or done which could support an inference that Ross administered and Penner took an oath when the purported affidavit was executed. It follows that the purported affidavit was not in fact a valid affidavit, and therefore Harris failed to file an expert affidavit with her complaint as required by § 9-11-9.1.

Since Harris failed to file an expert affidavit with her malprac-

tice complaint as required by § 9-11-9.1, the trial court properly granted summary judgment in favor of Murray and dismissed the complaint. Because the purported affidavit appeared on its face to be properly sworn, the application of pleading rules did not result in the complaint being subject to dismissal. See *Hewett v. Kalish*, 264 Ga. 183, 184 (442 SE2d 233) (1994). But after Murray discovered evidence that no oath had been given to the expert by the notary public, he moved for dismissal and summary judgment on the basis that Harris failed to file an expert affidavit. In considering matters outside the pleadings, the trial court treated the motion as one for summary judgment. Id. at 185. After considering Harris' response to the motion, the trial court concluded that Murray pierced Harris' pleading affidavit by showing that in the absence of an oath, the purported affidavit was no affidavit at all. See id. at 185. "In the absence of a valid jurat, a writing in the form of an affidavit has no force, no validity, amounts to nothing, when standing alone, or when construed in connection with [other evidence]." *Laurens County v. Keen*, 214 Ga. 32, 35 (102 SE2d 697) (1958); *Schmidt v. Feldman*, 230 Ga. App. 500, 501 (497 SE2d 23) (1998); *Harvey v. Kidney Center of Central Ga.*, 213 Ga. App. 319, 320 (444 SE2d 590) (1994).

Harris does not seek in this case to amend an insufficient or defective § 9-11-9.1 affidavit. The purported affidavit Harris filed with her complaint to comply with § 9-11-9.1 was in fact not an affidavit. Instead, Harris seeks an interpretation of § 9-11-9.1 that would allow her to obtain a valid affidavit and file it for the first time after the commencement of the action. No such construction can be placed upon the statute since this is precisely what § 9-11-9.1 prohibits by its plain terms.

Neither the liberal construction given to § 9-11-9.1 affidavits nor the broad right to amend such affidavits when they are insufficient or defective requires a different result. Section 9-11-9.1 affidavits are given a construction favorable to the plaintiff with respect to compliance with the procedural requirements of the statute. *Porquez v. Washington*, 268 Ga. 649, 650 (492 SE2d 665) (1997). Moreover, when the sufficiency of the affidavit is challenged, whether by a challenge to the expert's competency or by a challenge to the sufficiency of the expert's statements regarding negligent acts, the plaintiff is allowed to present supplementary evidence in support of the affidavit. *Hewett*, 264 Ga. at 184-185; *Porquez*, 268 Ga. at 651-652. However, the liberal construction and broad right granted under § 9-11-9.1 to amend defective affidavits has never been construed under the pre-1997 version of the statute to include the right to file a valid affidavit after the action has been commenced when no valid affidavit was filed with the complaint. Although, as the majority points out, the 1997 amendment to § 9-11-9.1 provides plaintiffs with a newly

created 30-day period to cure alleged defects by amendment pursuant to OCGA § 9-11-15, the Legislature did not give the 1997 version of the statute retroactive application, and it has no application in this case. In fact, the pre-1997 version of § 9-11-9.1 applicable in this case precludes amendment under § 9-11-15 when the plaintiff fails to file an affidavit with the complaint. Since a writing in the form of an affidavit, but without a valid jurat, has no force or validity and amounts to nothing, standing alone or construed with other evidence, the unsworn writing in the form of an affidavit filed by Harris with her complaint was not an affidavit. *Laurens County*, 214 Ga. at 35; *Harvey*, 213 Ga. App. at 320; *Schmidt*, 230 Ga. App. at 501.

Harris' failure to file an affidavit with the complaint subjected the complaint to dismissal for failure to state a claim under the express provisions of subsection (e) of § 9-11-9.1. Subsection (e) provides that: "Except as allowed under subsection (b) of this Code section, if a plaintiff fails to file an affidavit as required by this Code section contemporaneously with a complaint alleging professional malpractice and the defendant raises the failure to file such an affidavit in its initial responsive pleading, such complaint is subject to dismissal for failure to state a claim and cannot be cured by amendment pursuant to Code Section 9-11-15 unless a court determines that the plaintiff had the requisite affidavit available prior to filing the complaint and the failure to file the affidavit was the result of a mistake." Construing subsection (e) in *Hewett*, the court held that "[b]y referencing subsection (b) [of § 9-11-9.1], which sets forth one exception when a plaintiff need not file an expert affidavit with the complaint, and by providing that the complaint can be amended if the plaintiff had the affidavit before filing the complaint but by mistake failed to file it, subsection (e) [of § 9-11-9.1] is only designed to preclude amendment under § 9-11-15 when the plaintiff completely fails to file an affidavit." *Hewett*, 264 Ga. at 185-186. Because subsection (b) of § 9-11-9.1 is inapplicable in this case, and Harris did not have an affidavit before filing the complaint, neither of these exceptions limits the application of Subsection (e). Under the plain and unambiguous terms of § 9-11-9.1 (e), Harris' failure to file an affidavit with the complaint subjected the complaint to dismissal for failure to state a claim, and the failure could not be cured by amendment pursuant to OCGA § 9-11-15.

DECIDED JULY 16, 1998 —
RECONSIDERATION DENIED JULY 30, 1998 — 

*Weinstock & Scavo, Michael Weinstock, John B. Levy*, for appellant.

*Beckmann & Pinson, William H. Pinson, Jr., William R. Dekle,* for appellees.
*Block, Lepore & Sanders, Matthew Lepore,* amicus curiae.